Jeffrey A. BURGESS, Plaintiff,

v.

GATEWAY COMMUNICATIONS, INC.— Wowk TV, et al., Defendants.

Civil Action No. 2–97–0953.

United States District Court, S.D. West Virginia, Charleston Division.

Nov. 10, 1998.

Charles F. Donnelly, Mark W. Carbone, Molly Kettler Wade, Donnelly, Carbone & Kettler, Charleston, WV, for Jeffrey A. Burgess.

Neva G. Lusk, Spilman, Thomas & Battle, Charleston, WV, Niall A. Paul, Spilman, Thomas & Battle, Charleston, WV, Robert J. Ridge, Matthew H. Meade, Matthew T. Phillips, Katarincic & Salmon, Pittsburgh, PA, for Gateway Communications, Inc.–Wowk TV.

Michele Grinberg, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for John Fusco.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment as to Counts I, IV, and V of Plaintiff's Complaint.[1] For reasons discussed below, the Court **GRANTS** the motion and resolves the case.

### I. FACTUAL BACKGROUND

The factual background to this lawsuit is straightforward and simply stated. Burgess

---

1. Plaintiff's complaint asserted five claims. *Count II* was settled by the parties. *Count III* was dismissed by this Court. *Burgess v. Gateway* *Communications, Inc.—WOWK TV,* 984 F.Supp. 980 (S.D.W.Va.1997).

was employed by WCHS–TV. He left that job in April, 1995 to take a job as account executive with WOWK–TV 13, a television station owned and operated by Gateway Communications, Inc. ("Gateway"). In May, 1997 Gateway discharged Burgess, citing a poor evaluation and failure to meet specific performance goals set out in that evaluation. In September, 1997 Burgess filed this lawsuit, the remaining counts of which allege breach of contract, hostile work environment sexual harassment, and intentional infliction of emotional distress by outrageous conduct.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, 'after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor. The [nonmovant] 'cannot create a genuine issue of fact through mere speculation or the building of one inference upon another.' To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson[v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)] Court explained, the 'mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]'

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va. 1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates the motion for summary judgment.

### B. *Breach of Contract*

Burgess alleges that prior to and during his employment with Gateway, "Defendants and/or their agents entered into oral contracts with the Plaintiff." Compl. at ¶ 8. However, during discovery, Burgess identified only one oral contract as the basis of his breach of contract claim. At his deposition, Burgess testified:

> A. Before I became an employee, our contract was that because of the substantial amount of money that Gateway was putting into the marketplace, that [Defendant] John [Fusco] *needed my information to put on sponsorships,* for various weather sponsorship, helicopter sponsorship, what clients that I—that he should go after, *how much money he should ask for from these clients, how much money they were spending.*
>
> And in return, I was offered that—it was my understanding and my agreement with him that I would become a local sales manager for WOWK.

Burgess Dep. at 141. Ex. A, Defs.' Mot. Summ.J. (Emphasis added.)

Burgess testified further that the information he offered WOWK–TV was confidential

information garnered as an employee of WCHS–TV,[2] but that he was willing to breach his confidentiality agreement with WCHS in exchange for the job at WOWK.[3] The Court construes all inferences in favor of Burgess, as it must. Therefore, the Court accepts that, despite a clear and explicit confidentiality agreement with WCHS, Burgess made an oral contract with Fusco to exchange just such confidential information for the WOWK job. Burgess now asks this Court to ratify the exchange and enforce the second contract.

■ This oral contract between Burgess and WOWK is, however, unenforceable on grounds of public policy. The Restatement of Contracts (Second) gives this pertinent illustration of such an unenforceable contract: "A agrees to sell specific goods to B, and B agrees to buy them. A has previously contracted to sell the same goods to C, as B knows. The bargain between A and B is unenforceable on grounds of public policy (§ 194)[.]" Restatement (Second) of Contracts § 8 (1981). Section 194 states, "A promise that tortiously interferes with performance of a contract with a third person ... is unenforceable on grounds of public policy."[4] *Id.* § 194.

2. Under Burgess' contract with his former employer, WCHS–TV, he had agreed:
   (b) To not divulge to any person, firm or corporation, either during the term of his employment or for five (5) years after termination of his employment, any customer list, mailing list or financial report of EMPLOYER, or trade secrets or methods of conducting business acquired in the course of his employment with EMPLOYER....
   Ex. B, Defs.' Reply to Plf.'s Resp. to Defs.' Mot. Summ.J.

3. When asked if this exchange breached a confidentiality agreement, Burgess testified: "Yes, based on the fact that he [Fusco] promised me the job. That's the only way I would break the agreement, that he offered me the local sales manager's job. And I made that perfectly clear to him." Burgess Dep. at 142, Ex. A, Defs.' Mot.Summ.J.

4. Defendants argue that the Burgess/WOWK oral contract should not be enforced because it was based on "illegal consideration," citing *Haymond v. Hyer*, 80 W.Va. 594, 92 S.E. 854 (1917). The term "illegal consideration," however, is now archaic. Although used throughout the 19th century, it has not been employed in West Virgi-

There is an oddity here in that it was Fusco who induced Burgess to breach his confidentiality agreement and who now takes advantage of his own wrongful inducement to claim unenforceability of the subject contract. The issue harks back to a hoary principle of law. As Lord Mansfield said in *Holman v. Johnson*, 1 Cowp. 341, 343, 98 Eng.Rep. 1120, 1121 (K.B.1775).

> The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may say so. This principle of public policy is this: *'Ex dolo malo non oritur actio.' No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.*

(Emphasis added.) Burgess asks this Court to enforce an agreement to breach a contract, and that the Court will not do.[5] Accordingly, the Court **GRANTS** summary judgment for Defendants on the breach of contract issue.

nia jurisprudence since 1918. *Hartley v. Ault Woodenware Co.*, 82 W.Va. 780, 97 S.E. 137 (1918).

The Restatement notes, "Courts sometimes speak loosely of contracts as involving illegal or immoral 'consideration,' " but the fact that a rule of law renders a promise unenforceable does not prevent it from being consideration. Restatement (Second) of Contracts § 78 cmt. c. Such a promise, though unenforceable, is not gratuitous, and thus there is both consideration and a contract. *Id.* § 8.

*Haymond* actually stands for the proposition that "a new contract founded on a prior illegal one cannot be made legal." Syl. Pt. 3, 80 W.Va. 594, 92 S.E. 854. Here, the original contract with its confidentiality agreement is perfectly legal; the problem is that Burgess offers to breach the first contract to make the second. Breaching contracts is low behavior, but not illegal.

5. Defendants argue that Burgess' promise was also illegal under the West Virginia Trade Secrets Act. W.Va.Code § 47–22–1(d). Finding that Burgess' promise to breach his prior contract is sufficient to make the subject contract unenforceable, the Court does not reach this issue.

## C. Hostile Work Environment Sexual Harassment

■ To establish a claim for sexual harassment under the West Virginia Human Rights Act ("WVHRA"), W.Va.Code § 5–11–1, *et. seq.*, based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer. *Hanlon v. Chambers*, syl. pt. 5, 195 W.Va. 99, 464 S.E.2d 741 (1995). Burgess describes obnoxious and unpleasant workplace conduct by Fusco, but fails to show that any of it was based on Burgess' sex, an essential element of hostile environment sexual harassment.[6]

■ The Supreme Court of Appeals of West Virginia has not glossed the phrase "based on the sex of the plaintiff." Analyzing that element of sexual harassment in *Conrad v. ARA Szabo*, 198 W.Va. 362, 372, 480 S.E.2d 801, 811 (1996), the West Virginia court simply cited *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982). The *Henson* court explains the essence of a disparate treatment claim under Title VII is that an employee or applicant is intentionally singled out for adverse treatment on the basis of a prohibited criterion.[7] *Id.* (citations omitted). In proving a claim for a hostile work environment due to sexual harassment, therefore, the plaintiff must show that, but for the fact of [his] sex, [he] would not have been the object of harassment.[8] *Id.* (citations omitted). Only harassment that occurs because

of the victim's gender is actionable. *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir.1997).

■ Burgess reports that Fusco occasionally used vulgar language; made fun of Burgess' speech impediment; made fun of others, one female for being fat, another female for being a "preppie", and a male for having red hair; and screamed, making at least one (female) secretary cry. Fusco also exhorted Burgess and a group of coworkers to make sure appointments were kept, and not "leave me holding my dick in my hand."[9] Only one of these alleged harassments was directed at Burgess. The rest were apparently directed at men and women fairly equally. In cases where the conduct complained of is equally offensive to male and female workers, there is no actionable sexual harassment. *Henson*, 682 F.2d at 904. In such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment. *Id.* Nor can the one incident directed at Burgess, making light of his speech impediment, be interpreted as based on sex. Speech impediments are gender neutral. Vulgarity, insensitivity, and meanness of spirit are not sufficient to support a hostile work environment claim. *McWilliams v. Fairfax County Bd. of Supervisors*, 72 F.3d 1191, 1196 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996).

■ In response, Burgess makes one further allegation, which he claims is clearly based on sex: female employees received preferential treatment by male supervisors in exchange for sexual activities. Because of

6. As Defendants argue, there are also significant questions as to whether the complained of conduct was severe or pervasive but, finding that none of the conduct occurred because of Burgess' sex, the Court need not reach that issue.

7. The Supreme Court of Appeals of West Virginia also has "repeatedly held that we will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." *Hanlon*, 195 W.Va. at 112, 464 S.E.2d at 754 (citations omitted).

8. Both parties acknowledge that same sex sexual harassment is now recognized as actionable by the United States Supreme Court, *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and by the Supreme Court of Appeals of West Virginia, *Willis v. Wal–Mart Stores, Inc.*, 504 S.E.2d 648 (W.Va.1998).

9. Burgess also makes much of an allegedly obscene fax sent into the office, which was clearly addressed on the cover sheet to a coworker, but intercepted by Burgess. The Court cannot make out how Burgess was harassed by reading other peoples' mail.

his sex, Burgess says he could not participate and was, thus, discriminated against based on sex. This argument has been squarely rejected by our Court of Appeals. *Becerra v. Dalton,* 94 F.3d 145, 149–50 (4th Cir.1996). Promotion of a co-worker based on sexual favors does not amount to sexual discrimination under Title VII. *Id.* at 150. The *Becerra* court approvingly cited *DeCintio v. Westchester County Medical Center,* 807 F.2d 304 (2d Cir.1986), as one in a line of cases holding that an employer who promotes his lover or paramour, or otherwise accords the lover or paramour preferential treatment, is not liable for sexual harassment of another employee. The explanation is simple:

> [The plaintiffs] were not prejudiced because of their status as males; rather, they were discriminated against because [the selecting official] preferred his paramour. [The plaintiffs] faced exactly the same predicament as that faced by any woman applicant for the promotion: No one but [the paramour] could be considered for the appointment because of [the paramour's] special relationship to [the appointing official].

*Id.* at 308.

■ Burgess attempts to distinguish his case because, he alleges, Fusco gave preferential treatment to a woman who was the paramour of another manager, in addition to a woman who was Fusco's paramour. This argument misunderstands or wilfully ignores the teaching of this line of cases. The point is not that preference only for one's own paramour is permissible, but rather that preferential treatment, favoritism, and cronyism, while unjust and unfair, do not constitute sexual discrimination. See *Autry v. North Carolina Dep't. of Human Resources,* 820 F.2d 1384, 1387 (4th Cir.1987) (promotion of friend and political ally is not racial discrimination under Title VII); *Balazs v. Liebenthal,* 32 F.3d 151, 159 (4th Cir.1994) ("to hold that favoritism towards friends and relatives is per se violative of Title VII would be, in effect, to rewrite federal law") (citation omitted); EEOC Policy Guidance on Sexual Favoritism, 8 Fair Empl. Prac. Man. (BNA, part A at 405:6817) (Jan. 12, 1990) (an isolated instance of favoritism toward a paramour or spouse or friend may be unfair, but it does

not discriminate against women or men in violation of Title VII).

Burgess' final argument is that a plaintiff's showing as to the elements of a *prima facie* case of hostile environment sexual harassment to defeat a motion for summary judgment need only be *de minimis.* Syl. Pt. 1, *Conrad,* 198 W.Va. 362, 480 S.E.2d 801. Burgess, however, has produced *no* evidence that any of the hostile, abusive, preferential, or discriminatory treatment complained of was based on Burgess' sex. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on hostile environment sexual harassment.

## D. Intentional Infliction of Emotional Distress by Outrageous Conduct

■ For a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress by outrageous conduct, four elements must be established: 1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; 2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; 3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and 4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Travis v. Alcon Laboratories, Inc.,* No. 24207, 504 S.E.2d 419 (W.Va.1998).

The first issue for the Court on summary judgment is whether, considering the allegations in a light most favorable to Plaintiff, Defendants' conduct reasonably may be regarded as so extreme and outrageous as to permit recovery. *Hines v. Hills Dep't. Stores, Inc.,* 193 W.Va. 91, 98, 454 S.E.2d 385, 392 (1994) (Cleckley, J., concurring). Only if reasonable people could differ on this issue is the question one for the jury. *Id.* In this inquiry, Plaintiff has a difficult burden. The comments to Restatement of Torts (Second) § 46 explain:

> Liability has been found only where the conduct has been so outrageous in charac-

ter, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

 The outrageous conduct Burgess complains of consists of Fusco's alleged breach of the oral contract, Fusco's occasionally making fun of his speech impediment, Fusco's questioning in front of others why Burgess failed to sign up some small accounts and failed to make budget, Fusco's comment that employees should not leave him "holding his dick in his hand," and Fusco's warnings that employees should not go over his head to complain.

Even assuming all of Burgess' allegations to be true, they do not approach the threshold of outrage or the boundaries of decency in contemporary society.

> The liability [for outrageous conduct] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Travis,* 504 S.E.2d at 425 (citing *Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 461 S.E.2d 149 (1995) (quoting Restatement of Torts (Second) § 46)). Burgess simply recites a relatively small number of insults, indignities, threats, annoyances, and petty oppressions—all of it unpleasant, but none of it actionable. Consequently, the Court **GRANTS** summary judgment on the issue of intentional infliction of emotional distress.[10]

10. Finding that Burgess has not made a showing sufficient to establish outrageous conduct, the Court does not consider whether intentional infliction of emotional distress would be preempted

## III. CONCLUSION

Accordingly, the Court **GRANTS** summary judgment to Defendants on *Count I,* breach of contract; *Count IV,* hostile work environment sexual harassment; and *Count V,* intentional infliction of emotional distress by outrageous conduct and **ORDERS** this case be **DISMISSED** with prejudice and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

under the WVHRA, under a *Guevara*-type analysis. *Guevara v. K–Mart Corp.,* 629 F.Supp. 1189 (S.D.W.Va.1986) (Haden, C.J.).