513 S.E.2d 463

**Danny NAPIER, Plaintiff Below, Appellant,**

v.

**Tim STRATTON, an Individual, Randy Bronson, an Individual, and Lowe's Home Centers, Inc., a Foreign Corporation, Defendants Below, Appellees.**

No. 25060.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1998.

Decided Dec. 11, 1998.

William S. Thompson, Cook & Cook, Madison, West Virginia, Attorney for the Appellant.

Dina M. Mohler, Rita A. Massie, Kay, Casto, Chaney, Love & Wise, Charleston, West Virginia, Attorneys for the Appellees.

PER CURIAM:

The appellant in this proceeding, Danny Napier, sued Lowe's Home Centers, Inc., and certain of its employees for wrongfully terminating his employment and for violating the West Virginia Human Rights Act. After extensive discovery, the Circuit Court of Cabell County granted the defendants summary judgment. In this appeal, the appellant claims that the circuit court erred in granting the summary judgment and that the court should have allowed the case to go to a jury.

## FACTUAL BACKGROUND

The appellant, who weighed 320 pounds and who had previously suffered an umbilical hernia, began working for Lowe's Home Centers, Inc., in 1993. His work was not entirely satisfactory. In March 1995, he received an evaluation of "two" on a scale of "five." Thereafter, in June 1995, he re-injured his hernia in the course of employment. He then filed a Workers' Compensation claim, which, over the protest of his employer, was held compensable. He remained off work due to the injury until November 1995. On the first day of that month, Tim Stratton, who was a Lowe's employee, and who is one of the appellees in this proceeding, wrote the appellant and stated that if he didn't return to work on November 15, 1995, Lowe's would consider him to have voluntarily resigned his job. The appellant returned to work for a short period. He reaggravated his injury and was not released by his doctor to return to work until January 29, 1996.

On February 2, 1996, less than a week after he returned to work, he received a "write-up" for leaving work early and for failing to punch out on a time clock. Two weeks later, on February 16, 1996, he received a second "write-up" and was discharged for falsifying his time records.

Following his discharge, the appellant instituted the present proceeding against Lowe's Home Centers, Inc., and certain of its employees. In his complaint, he alleged that

the discharge was in retaliation for his having filed a workers' compensation claim. He also alleged that in discharging him, Lowe's Home Centers, Inc., had violated the West Virginia Human Rights Act as it relates to handicapped individuals. Further, he claimed that he had been subjected to a hostile work environment in the course of his employment; that he had been the victim of the reckless or intentional infliction of emotional distress; and that Lowe's Home Centers, Inc., had breached an implied contract in discharging him.

After substantial discovery, Lowe's Home Centers, Inc., and the other defendants, moved for summary judgment. After conducting a hearing, the circuit court granted the motion. The judge also found that there was no "triable issue" of material fact as to the issues and ruled that Lowe's Home Center, Inc. and the other defendants were entitled to judgment as a matter of law on those issues.

In the present proceeding, the appellant claims that there were questions of material fact in the case. Therefore, the court erred in granting summary judgment.

## STANDARD OF REVIEW

This Court has recognized that: "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, the court has held that: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Syllabus Point 4, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

## DISCUSSION

One of the appellant's claims was that he had been wrongfully discharged from his employment because he filed a workers' compensation claim. West Virginia Code § 23–5A–1 establishes the predicate for bringing a wrongful discharge claim on that basis. The Code section provides: "No employer shall discriminate in any manner against any of his present or former employees because of such

present or former employee's receipt of or attempt to receive benefits under this chapter [The Workers' Compensation Act]."

In *Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 403 S.E.2d 717 (1991), we discussed the proof required to establish a *prima facie* case for wrongful discharge for filing a workers' compensation claim. In Syllabus Point 1 of that case, we said:

In order to make a prima facie case of discrimination under W.Va.Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

In *Powell* we also explained that where there is a *prima facie* case, the employer may rebut the *prima facie* case by showing that there was a legitimate, non-pretextual, and non-retaliatory reason for the discharge. We said:

Because of the usual lack of direct evidence, court's have looked to a variety of factors. Proximity in time of the claim and the firing is relevant, of course. Evidence of satisfactory work performance and supervisory evaluations before the accident can rebut an employer's claim of poor job performance. Any evidence of an actual pattern of harassing conduct for submitting the claim is very persuasive.

*Powell v. Wyoming Cablevision, Inc., Id.* at 704, 403 S.E.2d at 721.

In the present case, although there is some proximity in time between the appellant's receipt of workers' compensation benefits and the termination of his employment, there is additional evidence that immediately before his termination he failed to comply with his employer's rules and that he falsified his work records.

While arguably the appellant made a sufficient showing to raise a *prima facie* suggestion that he was discharged because of his workers' compensation claim, there is also

418

compelling evidence proving that he was actually fired for falsifying his time records which was conduct impacting on a vital interest of the employer. In this Court's opinion, such conduct, which was unrelated to his workers' compensation claim justified his dismissal. We, therefore, conclude that there was no genuine issue of material fact relating to the wrongful discharge claim at the time summary judgment was entered. Therefore, the trial court properly entered summary judgment on that claim.

■ The appellant's second claim was that he was a "handicapped" person and that his discharge violated The West Virginia Human Rights Act, W.Va.Code § 5–11–1, *et seq.* In Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corporation,* 178 W.Va. 164, 358 S.E.2d 423 (1986), this Court held:

In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Conaway* also explained that a *prima facie* case may be overcome by the employer showing that there was some legitimate and non-discriminatory reason for the employer's action.

In the present case, the employer clearly made an adverse decision concerning the appellant, but the parties dispute whether he was actually a "handicapped" person, that is, whether he was a member of a protected class. The evidence on that question showed that he was overweight and that he had had an umbilical hernia. There was also evidence that his physician had authorized his return to work and that his work was a sedentary, desk position. While some development of the evidence might be desirable to determine whether he was actually "handicapped," there is compelling evidence that he falsified his time records and that was the reason for his termination.

■ The appellant's third claim is that he was subjected to a hostile work environment in his workplace. In support of this claim, the appellant, produced evidence suggesting that several employees of Lowe's, on six occasions, had made mocking or hurtful oblique references to his umbilical hernia.

■ To create a hostile work environment, inappropriate conduct must be sufficiently severe or pervasive to alter the conditions of an employee's employment. *See Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995). The events about which the appellant complains occurred over six months, and several of them occurred while the appellant was not at work. At least one of them involved a Christmas wish list which poked fun at numerous employees. Additionally, the evidence shows that instead of objecting to the conduct, the appellant joined in and participated in the conduct. He, for instance, added a mocking or hurtful comment about one of the defendants on the Christmas wish list.

Overall, the incidents cited in support of the hostile environment claim do not show the pervasiveness or severity sufficient to establish such an environment. Thus, the Court cannot conclude that further development of the evidence could establish the requisite pervasiveness or severity.

■ Another assertion of the appellant was that he had been subjected to intentional infliction of emotional distress. For there to be intentional infliction of emotional distress, there must be extreme and outrageous conduct which causes severe emotional distress to another. Annoying or mean-spirited conduct is not sufficient to support a claim. *Harless v. First National Bank of Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982).

The conduct complained of involved the six mocking or hurtful oblique remarks. The appellant never complained about those remarks to anyone with authority. In fact, as has been previously indicated, he himself made remarks. As was the case with the hostile environment claim, this Court does not believe that the remarks were of the severity sufficient to support the claim. Additionally, the Court cannot see how addition-

al development of the evidence could establish the claim.

 Lastly, the appellant claims that the handbook or "Workbook" issued to him by Lowe's created an implied contract which altered his at-will employment status and that his termination violated that implied contract. The documents filed indicate that the handbook contained the following statement:

> Your employment relationship with Lowe's is governed by the *"Employment At Will"* doctrine. This simply means that the contract of employment between you and the company is terminable at the will of either party, with or without cause, at any time and for any reason. This policy cannot be modified by any statements or omissions of statements by any member of management or Company representative, manuals, guides, employment documents or Company materials or memorandums provided in connection with your employment, whether made pre or post employment unless approved in writing by the president of Lowe's.

We believe that this language plainly indicates that the appellant's employment was at-will. No further development of the facts could alter this conclusion in light of this language. Certainly, the handbook cannot be construed as creating an implied contract.

Having determined that there was no genuine issue of material fact in this case and having further determined that the evidence is not desirable to clarify the application of the law, we conclude that the circuit court properly awarded the appellee summary judgment.

The judgment of the Circuit Court of Cabell County is, therefore, affirmed.

Affirmed.

Justice McGRAW did not participate in the decision of this case.