633 S.E.2d 8

**Reggie Lee PHILYAW, Plaintiff below, Appellant,**

v.

**EASTERN ASSOCIATED COAL CORP., a West Virginia corporation, Defendant below, Appellee.**

**No. 32754.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 15, 2006.

Decided: May 12, 2006.

Concurring Opinion of Justice Davis July 18, 2006.

Dissenting Opinion of Justice Starcher July 12, 2006.

Richard Neely, Esq., Neely & Hunter, Charleston, John D. Wooton, Esq., Beckley, for the Appellant.

Ancil G. Ramey, Esq., Jeffrey K. Phillips, Esq., Steptoe & Johnson, P.L.L.C., Charleston, for the Appellee.

PER CURIAM.

This action is before this Court upon the appeal of the plaintiff below, Reggie Lee Philyaw, from the March 25, 2005, order of the Circuit Court of Raleigh County, West Virginia, granting summary judgment in favor of the defendant below, Eastern Associated Coal Corp. Philyaw, a safety supervisor at Eastern's underground Harris No. 1 Mine in southern West Virginia, contended that he suffered a mental breakdown and resulting disability because he felt Eastern required him, to maintain his continued employment, to unlawfully manipulate dust samples taken at the Mine in order to show that Eastern was in compliance with applicable federal mine health and safety regulations. According to Philyaw, Eastern is, therefore, liable to him for the intentional or reckless infliction of emotional distress. Although Philyaw was told by Eastern that he would be fired if, as safety supervisor, he allowed dust in the mine to rise to the level such that the mine would be out of compliance with the regulations, the Circuit Court found that the directive was not an instruction to violate the law.[1] Because Philyaw was unable to put forth any proper evidentiary basis to provide a foundation for his subjective perception of Eastern's directive, the Circuit Court granted summary judgment to Eastern. Philyaw now appeals that ruling.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon careful examination, this Court is of the opinion that Philyaw's claim of intentional or reckless infliction of emotional distress fails to withstand scrutiny under the requirements set forth by this Court in *Travis v. Alcon Laboratories*, 202 W.Va. 369, 504 S.E.2d 419 (1998). In that regard, the record fully supports the finding of the Circuit Court that Philyaw's subjective belief that he had to manipulate the dust samples was not based upon any communication or direction from Eastern. Moreover, the record demonstrates that Philyaw had alternatives, other than violating such regulations, to control and report the dust levels at the Harris No. 1 Mine. Accordingly, the summary judgment entered for the appellee, Eastern Associated Coal Corp., was appropriate, and the March 25, 2005, order of the Circuit Court is affirmed.

I.

Factual and Procedural Background

The appellant, Reggie Lee Philyaw, was employed by Eastern Associated Coal Corp.

---

1. This Court need not preemptively settle the question of whether Philyaw, in fact, manipulated dust samples in violation of the federal mine health and safety regulations. No such finding was made by the Circuit Court. Rather, the Circuit Court assumed, for purposes of summary judgment only, that Philyaw engaged in such violations. The issue before this Court, as before the Circuit Court, is one of law and not equity and concerns the nature of Eastern's communi-cations to Philyaw and his interpretation thereof. Philyaw's resulting conduct, though certainly relevant, is not dispositive of that issue. As the Circuit Court stated, the assumption that Philyaw violated the regulations "is not dispositive of the issue presented here. This issue is framed in the context of Plaintiff's claim that the Defendant engaged in conduct which supports an action for the intentional infliction of emotional distress."

for 28 years and, during the period in question, worked as a safety supervisor at Eastern's underground Harris No. 1 Mine in southern West Virginia. His job duties included preventing harmful respirable dust at the Mine from exceeding the safety levels set forth in the regulations of the Mine Safety & Health Administration ("MSHA") of the United States Department of Labor.[2] If the level of respirable dust to which the miners were exposed exceeded the specified limits, Philyaw was authorized by Eastern to take corrective action.

In the early 1990s, Philyaw and other employees of Eastern were the subjects of a federal investigation concerning whether Eastern had failed to comply with MSHA dust sampling requirements. Thereafter, Eastern entered a plea of guilty to a misdemeanor charge in the United States District Court for the Southern District of West Virginia, and the investigation came to an end.[3] Although Philyaw does not include this period of time in his assertion that Eastern engaged in the intentional or reckless infliction of emotional distress, he contends that the investigation placed him under severe strain and that it provides additional context with regard to his subsequent mental breakdown.[4]

Philyaw bases his claim against Eastern upon the period of time between 1998 and March 13, 2002, the date he left his employment. According to Philyaw, Eastern resumed pressuring him in 1998 and, in fact, required him thereafter, as a condition of his employment, to unlawfully manipulate various dust samples taken at the Harris No. 1 Mine to show that Eastern was in compliance

**2.** Chapter 1, Title 30, of the Code of Federal Regulations, relating to mineral resources, is entitled Mine Safety and Health Administration, Department of Labor, and subchapter O thereof is entitled Coal Mine Safety and Health. Within that subchapter is 30 C.F.R. § 70.1 (2005), *et seq.*, concerning mandatory health standards, including respirable dust standards, for underground coal mines.

**3.** An Information filed in the District Court alleged transgressions of 30 U.S.C. § 820(d) (1977), prohibiting violations of mandatory mine health or safety standards.

**4.** Philyaw, who was subpoenaed to appear before a federal grand jury during the investigation, claims that he feared being charged with the manipulation of various dust samples sent to MSHA for analysis. No charges against Philyaw, however, were ever filed.

Nevertheless, Philyaw asserts that, prior to the investigation, he was under pressure from Eastern to manipulate the dust samples in order to show compliance with the regulations concerning respirable dust levels. According to Philyaw, evidence of such pressure can be seen in a letter he received from Eastern attorney, Thomas L. Clarke, in January 1990. Philyaw interprets the letter as suggesting that he would be cut off from all support by Eastern during the investigation unless he made false statements before the grand jury to cover up what he claims was Eastern's involvement in the altering of dust samples. A fair reading of the letter from Clarke, however, does not support Philyaw's interpretation. As the letter states in relevant part:

A conflict of interest may exist in this case if you have done anything which violates company rules or the law. In that event, you must retain separate legal counsel to represent you as the company lawyers cannot represent you and the company if a conflict of interest exists. If you have any reason whatsoever to doubt whether your actions were appropriate, whether you may be a target in this investigation or whether your acts have been in accordance with company rules and the law, then you must immediately obtain separate counsel and should not discuss this case with us any further until you speak with counsel.

In the event you desire or require separate legal counsel, company policy provides for you to be indemnified by the company for the expense of separate counsel, so long as you acted in good faith and did not knowingly violate the law.

Nothing in the letter evidences any actions taken by Eastern to pressure or require Philyaw to manipulate dust samples sent to MSHA for analysis. Nor does the letter imply that Philyaw should make false statements before the grand jury. Instead, it simply advises Philyaw to obtain separate counsel in the event of a conflict of interest during the investigation. Moreover, the letter reasonably conditions indemnification upon good faith and lawful conduct. *See, by analogy,* W. Va.Code, 31D–8–856 (2002), stating that a corporate officer "who is a party to a proceeding" may be indemnified by the corporation—but not for "an intentional violation of criminal law."

The substance of Philyaw's grand jury testimony is not before this Court, and, as stated above, the investigation was brought to an end upon Eastern's misdemeanor plea. In any event, Philyaw does not include the time-frame surrounding the investigation and the letter from Clarke in his assertion of intentional or reckless infliction of emotional distress.

with the MSHA regulations.[5] In so alleging, Philyaw relies solely upon the admonition of Eastern, communicated by the general manager at the Harris No. 1 Mine, that he would be fired if, as safety manager, he permitted the dust levels to render the Mine out of compliance with the regulations. As the Circuit Court observed below:

> Plaintiff concedes that he was never specifically instructed to engage in this manipulation, but he asserts that such instruction was implied in Defendant's communication to him that he would be fired if he allowed the Mine to go out of compliance. Plaintiff testified in his deposition that he thought this communication constituted an instruction to manipulate the testing environment to make sure that the test samples were clean.

In March 2002, Philyaw suffered a mental breakdown. He left his employment with Eastern on disability and was later granted a permanent total disability award by the Social Security Administration.

On March 9, 2004, Philyaw filed an action against Eastern in the Circuit Court. He asserted that Eastern required him, as a condition of his employment, to unlawfully manipulate dust samples at the Harris No. 1 Mine between 1998 and March 2002, thereby placing him in fear of further investigation, possible prosecution and loss of employment, all of which resulted in his mental breakdown and disability. According to Philyaw, Eastern was, therefore, liable for the intentional or reckless infliction of emotional distress.[6]

In January 2005, Eastern filed a motion for summary judgment contending that nothing in the record, including Philyaw's deposition testimony, suggested that Eastern's communications concerning the dust levels at the Mine rose to the level Philyaw claimed. Philyaw filed a response asserting that Eastern, in effect, required him to violate the MSHA regulations. The Circuit Court conducted a hearing upon the motion on March 3, 2005.

On March 25, 2005, the Circuit Court granted the motion and entered summary judgment in favor of Eastern. The Circuit Court found that, although Philyaw was told by Eastern that he would be fired if he permitted the dust levels to render the Harris No. 1 Mine out of compliance with the regulations, Philyaw's interpretation of that communication was subjective and not based upon any instruction to violate the law. As the Circuit Court stated:

> The weakness in Plaintiff's position, in the context of a claim for the intentional infliction of emotional distress, is that Plaintiff points to no overt conduct of the Defendant. Plaintiff relies entirely on his subjective interpretation of Defendant's communication. * * * The admonition of which Plaintiff complains is precisely that: if you do not accomplish the assigned goal you will be fired. That command is strict, demanding and perhaps unreasonable, but it is a legitimate demand of an employer. * * * Plaintiff's belief that he was in a predicament with no comfortable solution does not support a cause of action for the intentional infliction of emotional distress.

Philyaw appeals to this Court from the entry of summary judgment.

## II.

### Standard of Review

■ Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mueller v. American Electric Power Energy Services*, 214 W.Va. 390, 392–93, 589 S.E.2d 532, 534–35 (2003); 11A M.J., *Judgments and Decrees*, § 217.1 (Michie 1997). As this Court explained in syllabus point 7 of *Petros*

---

5. According to Philyaw, manipulation could be carried out by artificially slowing down production during dust sampling periods or by engaging in sampling at atypical locations at the Mine site.

6. In addition, Philyaw asserted a "deliberate intent" cause of action against Eastern pursuant to

*W.Va.Code*, 23–4–2 (1994) (subsequently amended in 2003 and 2005). As the Circuit Court noted in its order of March 25, 2005, however, Philyaw withdrew that cause of action. The assertion of "deliberate intent" is, therefore, not before this Court in this appeal.

*v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961):

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe the constitutional right of a party to a trial by jury; it is not a substitute for a trial or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.

Syl. pt. 3, *Harrison v. Town of Eleanor,* 191 W.Va. 611, 447 S.E.2d 546 (1994). *See also,* syl. pt. 7, *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Thus, syllabus point 5 of *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971), holds:

> A motion for summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law.

Syl., *Redden v. Comer,* 200 W.Va. 209, 488 S.E.2d 484 (1997); syl. pt. 1, *Wayne County Bank v. Hodges,* 175 W.Va. 723, 338 S.E.2d 202 (1985).

■ Upon appeal, the entry of a summary judgment is reviewed by this Court *de novo. Redden, supra,* 200 W.Va. at 211, 488 S.E.2d at 486; syl. pt. 1, *Koffler v. City of Huntington,* 196 W.Va. 202, 469 S.E.2d 645 (1996); syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Nevertheless, as this Court stated in syllabus point 3 of *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997): "Although our standard of review for summary judgment remains *de novo,* a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." Syl., *Hively v. Merrifield,* 212 W.Va. 804, 575 S.E.2d 414 (2002);

syl. pt. 3, *Glover v. St. Mary's Hospital,* 209 W.Va. 695, 551 S.E.2d 31 (2001); syl. pt. 2, *State ex rel. Department of Health and Human Resources v. Kaufman,* 203 W.Va. 56, 506 S.E.2d 93 (1998).

## III

### Discussion

■ In entering summary judgment for Eastern, by order dated March 25, 2005, the Circuit Court incorporated a 7 page memorandum of opinion which set forth the Circuit Court's factual determinations and conclusions of law. The order and memorandum amply facilitate appellate review of the summary judgment and, therefore, comply with the standard set forth in *Lilly, supra.* In granting summary judgment, the Circuit Court relied upon *Travis v. Alcon Laboratories, supra,* a certified question case from the United States District Court for the Southern District of West Virginia, in which this Court set forth the elements of a cause of action for the intentional or reckless infliction of emotional distress. Syllabus point 3 of *Travis* holds:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 5, *Williamson v. Harden,* 214 W.Va. 77, 585 S.E.2d 369 (2003); *Bine v. Owens,* 208 W.Va. 679, 684, 542 S.E.2d 842, 847 (2000); 18 M.J., *Torts,* § 2, p. 556 n. 3 (2005).[7]

---

**7.** This Court, in *Travis,* noted that the intentional or reckless infliction of emotional distress, also known as the tort of outrage, "is recognized in

West Virginia as a separate cause of action," separate, for example, from an action for wrongful discharge. 202 W.Va. at 373 n. 4, 374, 504

Here, the Circuit Court focused upon the first element listed above and observed that "*Travis* requires, and logically so, that we focus on the conduct of the Defendant and apply a reasonably objective standard to it." The Circuit Court then concluded that, Philyaw's subjective interpretation notwithstanding, Eastern's communications to him concerning the dust levels at the Harris No. 1 Mine, although perhaps unrealistic, did not constitute conduct that was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." In so ruling, the Circuit Court correctly acknowledged its "gate-keeping" role in actions of this nature. As the Circuit Court stated:

It is a matter of law, and therefore within the province of the court to determine whether the conduct of the defendant might reasonably be found to satisfy the first element [of *Travis*]. If the court finds that it does, or if it finds that "reasonable men may differ," it becomes an issue for the trier of fact ... [.] If the trial court finds, however, that the conduct of which plaintiff complains could not be found by a reasonable person to satisfy element 1, it is the duty of the trial court to grant summary judgment to the defendant.

That observation is in accord with syllabus point 4 of *Travis* which holds:

In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

Syl. pt. 7, *Love v. Georgia–Pacific Corporation*, 209 W.Va. 515, 550 S.E.2d 51 (2001).

In *Johnson v. Hills Department Stores*, 200 W.Va. 196, 199, 488 S.E.2d 471, 474 (1997), and in *Tanner v. Rite Aid of West Virginia*, 194 W.Va. 643, 650–51, 461 S.E.2d 149, 156–57 (1995), this Court indicated that, to support a claim of extreme and outrageous conduct, it is not enough that the defendant acted with a tortious intent or, as noted in *Tanner*, that the defendant's conduct could be characterized as malicious. Rather, liability depends upon whether the conduct has been so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Confirming those principles in *Travis*, this Court stated that, although the workplace affords more opportunity for the intentional or reckless infliction of emotional distress to occur, the defendant's conduct must be more than "unreasonable, unkind or unfair," it must truly offend community notions of acceptable conduct. 202 W.Va. at 375, 504 S.E.2d at 425.

In *Kanawha Valley Power Company v. Justice*, 181 W.Va. 509, 383 S.E.2d 313 (1989), the Power Company filed an action against an employee, Charles L. Justice, to recover overpayments under a sick leave, wage-continuation plan. In his counterclaim for outrageous conduct, Justice asserted, *inter alia*, that the Company's comment that they "could discuss the alternatives" to repayment meant, "between the lines," that he might be terminated from employment. In affirming summary judgment in favor of the Company, however, this Court noted that of prime importance was the fact that the Power Company's demand for repayment "was a legitimate one." Moreover, this Court observed that, although various statements made to Justice concerning repayment "were, at best, ambiguous," they were not sufficiently outrageous to support the counterclaim. 181 W.Va. at 513, 383 S.E.2d at 317. *See also, Hosaflook v. Consolidation Coal Company*, 201 W.Va. 325, 335, 497 S.E.2d 174, 184 (1997) (affirming summary judgment against a claim of intentional infliction of emotional distress and indicating that a "strong showing" of misconduct is required in such cases); *Keyes v. Keyes*, 182 W.Va. 802, 805, 392 S.E.2d 693, 696 (1990) (suggest-

S.E.2d at 423 n. 4, 424. *See,* annot., *Modern status of intentional infliction of mental distress as independent tort: "outrage,"* 38 A.L.R.4th 998

(1985) (West Virginia included among states recognizing intentional infliction of emotional distress as an independent tort).

ing that plaintiffs must meet a "high standard" in tort of outrage cases).

■ Here, as in *Kanawha Valley Power*, Eastern's demand was a legitimate one. Indeed, Eastern's instruction to Philyaw, a safety supervisor, that he not permit respirable dust levels to exceed certain limits at the Mine, was, to the extent mandated by federal health and safety regulations, *a fortiori* within Eastern's permissible expectations as an employer. Nothing in the record supports Philyaw's interpretation that the instruction required him to violate the regulations by manipulating the dust samples sent to MSHA. Eastern's communication that Philyaw would lose his job if he permitted the dust levels to render the Mine out of compliance may have been unrealistic or even unreasonable, but, as the Circuit Court concluded, it does not rise to the level of supporting an action for the intentional or reckless infliction of emotional distress. As noted in the Circuit Court's memorandum of opinion, Eastern's instruction to Philyaw was not ambiguous; its words contained "no ambiguity that a reasonable person can interpret as an employer's command that his employee break the law." [8]

Nor does the record show that manipulation of the samples was Philyaw's only option to keep the Harris No. 1 Mine in compliance with the regulations. As stated by the Circuit Court, one solution Philyaw had, although not an easy one, was to "attempt to comply with his employer's command without breaking the law, and, if he failed to satisfy his employer's unreasonable demand, to suffer the consequences." Problematic, however, is Philyaw's assertion that Eastern's communication, that he would be fired if he permitted the dust levels to render the Mine out of compliance, constituted an absolute instruction to break the law to the exclusion of any other option available to him as a safety supervisor at the Mine site. [9] Such an assertion goes well beyond interpreting Eastern's communication to mean keeping the Mine in compliance by "legal or illegal means." In any event, the record demonstrates that Philyaw had alternatives, other than violating the federal regulations, to control and report the dust levels at the Harris No. 1 Mine. Specifically, Eastern had a dust ventilation plan pertaining to its operations which required safety supervisors, such as Philyaw, to make sure that various dust suppression devices, such as water sprays, were working properly. In the event of excessive dust levels, Philyaw was authorized by Eastern to take corrective action.

This Court concludes, therefore, that the Circuit Court was warranted in determining, as a matter of law, that Eastern's communications to Philyaw could not reasonably be considered, under *Travis*, to be an intentional or reckless infliction of emotional distress. [10]

---

**8.** A review of the record reveals that it is likely that some of the stress felt by Philyaw as a safety supervisor emanated from the federal regulations themselves rather than solely from his employer. During the March 3, 2005, hearing upon the motion for summary judgment, counsel for Eastern suggested that the dust level requirements Philyaw was required to observe were "imposed by not only Eastern Associated Coal Corporation, but by the mining rules themselves." No doubt adding to such stress was what Philyaw described as the federal government's history of very little "commitment to dust sampling" on the one hand versus the subsequent grand jury investigation on the other. In any event, Philyaw's subjective reaction to the difficult circumstances of his employment does not, of itself, support his claim of outrageous conduct against Eastern.

**9.** During the March 3, 2005, hearing on the motion for summary judgment, counsel for Philyaw stated:

Mr. Neely: * * * Reggie will testify . . . that he was told explicitly, implicitly, in all kinds of different ways, to make sure the Mine didn't go out of compliance.

The Court: But he took that also to be—to mean make sure it doesn't go out of compliance by legal or illegal means.

Mr. Neely: Judge, that's not true.

The Court: I thought that's what the command meant to him.

Mr. Neely: No. The evidence will show that he always knew it meant by illegal means.

The Court: He took it to mean a command to act illegally.

Mr. Neely: It is not any different from the "March the prisoners to the rear and be back in five minutes."

The Court: It didn't mean "make sure things work well so that we don't have a mine out of compliance."

Mr. Neely: No. Never.

**10.** Eastern contends that Philyaw's complaint was not timely filed within the two year period specified by the applicable statute of limitations.

## IV.

## Conclusion

Upon all of the above, this Court is of the opinion that Philyaw's assertion of intentional or reckless infliction of emotional distress fails to withstand scrutiny under the requirements set forth in *Travis v. Alcon Laboratories.* The March 25, 2005, order of the Circuit Court of Raleigh County granting summary judgment in favor of Eastern Associated Coal Corp. is, therefore, affirmed.

Affirmed

STARCHER, J., dissenting.

(Filed Starcher July 12, 2006)

The majority opinion in the instant case studiously omits any suggestion that Eastern's actions were reprehensible and outrageous. But there is a strong case to be made that they were. It is for this reason that Mr. Philyaw's claim should be decided by a jury.

Taking the evidence in the light most favorable to Mr. Philyaw, Eastern engaged in a longstanding scheme to keep the truth about dangerous dust levels in its mines a secret from regulators and employees—by manipulating the dust level data reported to MSHA.

It is undisputed that Mr. Philyaw was expected to keep that reported data within legal limits or lose his job, despite the fact that (according to Philyaw) the only way to do so was to engage in subterfuge measures like artificially reducing coal production on the days that dust inspectors visited the mine, or directing the inspectors to a dust-free section of the mine. In other words, according to Philyaw's evidence, Philyaw was directed to skew the reported data in order to conceal the existence of unsafe working conditions. *See* n. 2, majority opinion.[1]

Is demanding that an employee improperly subject his fellow employees to unsafe conditions outrageous and intolerable?

I submit that this is at the least a jury question.

For this reason, I would reverse the grant of summary judgment for Eastern. Accordingly, I dissent. I am authorized to state that Justice Albright joins in this separate opinion.

DAVIS, C.J., concurring.

(Filed July 18, 2006)

I concur with the holding of the majority. I have chosen to write separately, however, to point out a misapprehension in the dissenting opinion concerning the elements, set forth in *Travis*, pertaining to a cause of action for the intentional or reckless infliction of emotional distress. As the majority indicates, a plaintiff must meet a "high standard" to sustain such a claim. *Keyes v. Keyes*, 182 W.Va. 802, 805, 392 S.E.2d 693, 696 (1990).

Here, the Circuit Court properly focused on the first element of the cause of action, described in *Travis*, which requires that the defendant's conduct be "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." As *Travis* suggests, if the defendant's conduct cannot be reasonably regarded as meeting that standard, then, even if the conduct is arguably unfair, the cause of action for the intentional or reckless infliction of emotional distress fails, and summary judgment is appropriate. *Travis*, 202 W.Va. at 375, 378, 504 S.E.2d at 425, 428. In this case, the Circuit Court so held and granted summary judgment in favor of Eastern Associated Coal Corp.

Appellant Philyaw was told by Eastern that he would be fired if he permitted the dust levels to render the Harris No. 1 Mine out of compliance with the federal mine and safety regulations. That admonition, though bluntly stated, was consistent with Philyaw's duties as a safety supervisor to prevent harmful respirable dust at the Mine from exceeding the safety levels set forth in the regulations of the Mine Safety & Health Administration ("MSHA") of the United

---

1. In granting summary judgment for Eastern, the Circuit Court never reached that issue. Nor does this Court need to address the statute of limitations, in view of the upholding of the summary judgment pursuant to *Travis*.

1. Of course, Eastern denies any such implication in its commands to Mr. Philyaw. Only in a trial could the truth of Mr. Philyaw's version of events—*versus* Eastern's—be ascertained.

States Department of Labor. Not noted in the dissenting opinion, however, is the fact that, beyond the above admonition of his employer, Philyaw could point to no overt conduct of Eastern supportive of his claim. Nor does the dissenting opinion note that Philyaw had alternatives, other than violating the federal regulations, to control the dust levels at the Mine, such as through the enforcement of Eastern's dust ventilation plan. The federal regulations and the ventilation plan were created to protect the safety of the coal miners.

Finally, as stated in *Travis*, the third element of a cause of action for the intentional or reckless infliction of emotional distress requires that the emotional distress suffered by the plaintiff be "caused" by the defendant. *See, Napier v. Stratton*, 204 W.Va. 415, 418, 513 S.E.2d 463, 466 (1998) (the extreme and outrageous conduct must cause the emotional distress); *Burgess v. Gateway Communications*, 26 F.Supp.2d 888, 893 (S.D.W.Va.1998) (the conduct of the defendant must cause the plaintiff to suffer emotional distress); 18 M.J. *Torts* § 2. (Matthew Bender & Co.2005) (liability attaches when the emotional distress is caused by the extreme and outrageous conduct); 86 C.J.S. *Torts* § 69 (1997) (there must be "actual and proximate causation" of the emotional distress by the defendant's conduct). *See generally*, Sara L. Johnson, Annotation, *Liability of employer, supervisor, or manager for intentionally or recklessly causing employee emotional distress*, 52 A.L.R.4th 853 (1987). The majority opinion raises an issue regarding causation by suggesting that the federal regulations themselves and their inconsistent enforcement by the United States Department of Labor, rather than Eastern alone, may have contributed to Philyaw's mental breakdown. Although such an issue concerning causation is ostensibly a question for determination by a jury, it would not preclude the entry of summary judgment in this case in view of Philyaw's failure to establish the first element of a cause of action for the intentional or reckless infliction of emotional distress, as discussed above. Eastern's admonition to Philyaw was not "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Had the admonition

been unclear or equivocal, the safety of the coal miners at the Harris No. 1 Mine could have been compromised. Thus, based upon the record before this Court, Eastern was entitled to judgment as a matter of law.

Accordingly, I respectfully concur with the majority opinion of the Court.