68 N.J. Super. 85 (1961)
172 A.2d 22
MIDDLESEX CONCRETE PRODUCTS AND EXCAVATING CORPORATION, A NEW JERSEY CORPORATION, ET ALS., PLAINTIFFS-APPELLANTS,
v.
THE CARTERET INDUSTRIAL ASSOCIATION, A NEW JERSEY CORPORATION, ET ALS., DEFENDANTS, AND PHILIP B. STREANDER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1961.
Decided June 12, 1961.
*86 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Melvin J. Koestler argued the cause for appellants (Messrs. Koestler & Koestler, attorneys).
Mr. Nicholas Conover English argued the cause for respondent (Messrs. McCarter & English, attorneys).
*87 The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiffs, Middlesex Concrete Products and Excavating Corporation (Middlesex), and Mr. and Mrs. Neiss, the sole stockholders and owners thereof, appeal from the entry of summary judgment in favor of defendant Philip B. Streander in their suit, charging tortious interference with contractual and business rights and relations.
Plaintiffs describe the defendants as follows:
"The first named defendant, the Carteret Industrial Association (hereinafter called the `C.I.A.'), is a corporation not for pecuniary profit organized by the `corporate defendants' and others for the purpose of advancing their joint interests, and used by the `corporate defendants' as an instrumentality to perform and carry out their joint purposes. The next nine defendants (herein called the `corporate defendants') are large industrial corporations having plants in Carteret, New Jersey, who are charged with the commencement of and participation in the perpetration of the tortious acts complained of. The remaining defendants are five individuals  two executive officers of the C.I.A., the attorney of the C.I.A. and of the corporate defendants, a professional engineer (Streander), and a construction inspector  who are charged with conspiring with the other defendants and with being the agents through and by whom the tortious acts were committed."
The total aggregate assessment for taxes of the property owned by the "corporate defendants" equals 56.26% of the total net Borough of Carteret ratables.
This appeal is concerned only with the trial court's granting of a motion for the entry of summary judgment in favor of defendant Streander. The other defendants have separately moved for summary judgment but the trial court has deferred hearing such motion until after the instant appeal has been decided.
In 1951 Middlesex contracted with the Borough of Carteret to construct for it a sewerage treatment plant and other facilities. The contract provided that Middlesex was to receive monthly payments equal to 90% of the work done, calculated on estimates made by the borough engineer. *88 Upon certification by the engineer that the contract had been completely performed the balance due Middlesex on the contract was to be paid in two installments.
Middlesex began construction and, as the work progressed, monthly estimates of work done were made by the engineer and were paid by the borough to the extent of 90% thereof up to and including December 1952. During this period, however, disputes arose between Middlesex and the borough engineer as to the correctness of his certifications and other items, and early in 1953 a series of conferences was had between Middlesex and the borough engineer over the disputed items. As a result, some of Middlesex's claims were allowed in whole or in part by the borough engineer, and some disallowed. In May 1953 and again in July 1953 Middlesex met with representatives of the borough in an effort to secure payment for 90% of the work certified by the engineer as having been done and to settle the other disputes. According to plaintiffs, considerable progress was made towards the settlement of all matters in dispute.
It is at this point that plaintiffs claim the corporate defendants and their agents interfered; accused Middlesex and the municipal engineer of collusion, fraud, and wrongdoing; charged that excessive amounts were included in the pending unpaid certifications by the engineer; urged that payment of certified amounts be made only after judicial determination by legal action; and threatened the members of the borough council with criminal and civil suit if payments to Middlesex were approved by the council. Plaintiffs alleged that as a result of the foregoing, the settlement which had been so near to consummation was rendered wholly impossible and, on July 20, 1953, Middlesex was compelled to file suit against the borough and the borough engineer.
In November 1953 Middlesex applied for partial summary judgment in the then pending suit for the sums due to it as shown by the borough engineer's certified estimates of work done and, on December 4, 1953, the borough consented to the entry of a judgment for $343,000 and promptly paid *89 the same. The other items of dispute remained unresolved. Six years of litigation ensued.
In April 1954 the borough retained the engineering firm of Philip B. Streander as consultant in the then pending action. Plaintiffs charge that Streander, instead of making an honest and impartial engineering investigation and report of the facts as he found them, combined with and joined the other defendants and became a part of their combination and conspiracy. The complaint alleges that Streander made computations of the amount of work done in a dishonest and improper manner designed to show that the borough engineer had over-certified quantities of work done, and, without proper investigation, made accusations against Middlesex and the engineer that the prices allowed by the engineer to Middlesex were fraudulent, collusive, excessive, and exorbitant. As a result of Streander's investigation and report dated August 1954 the borough applied for and was granted leave to amend its pleadings so as to add separate defenses, a counterclaim and cross-claim.
The suit came to trial in September 1957 and consumed 121 court days. Streander appeared as consultant and advisor for the borough during the trial and testified as an expert witness for it. Middlesex's demands in the suit totalled $1,800,000, less $343,000 previously paid under the partial summary judgment. The trial court found in the plaintiffs' favor to the extent of $431,291.91 and also dismissed the counterclaim filed against Middlesex. In its opinion the trial court was critical of Streander's report and gave little weight to it. The court indicated that Streander and his employees had knowingly used improper methods of computation as to work done and the cost thereof in an attempt to make out a case of fraud. In the opinion of the trial court, "Streander and his employees who testified added little to substantiate the Borough's claims or throw much doubt on Booz's computations."
Plaintiffs then filed the present suit charging, as heretofore detailed, all of the defendants with tortious interference. *90 The complaint also charged that in 1956 Streander designed a new storm sewer for the borough and prepared the advertisement for bids in such a manner and form as to exclude Middlesex from bidding because of its pending suit against the borough. This allegation, according to plaintiffs, was not made for the purpose of recovering damages but to show the bitter malice towards plaintiffs which actuated Streander. It was also alleged that Streander signed and swore to a false affidavit dealing with interrogatories that had been propounded by the plaintiff in the then pending suit.
Streander filed a separate answer which inter alia set forth that his acts and conduct complained of by plaintiffs were privileged because they were part of and in connection with a proper judicial proceeding and that plaintiffs had no cause of action against him in relation thereto. He then moved for summary judgment in his favor.
The trial court granted the motion holding that Streander's investigation, report, consultations, and testimony as an expert witness were made and given in the course of a judicial proceeding and all had relation thereto. It is from this judgment that plaintiffs appeal.
In essence it is plaintiffs' contention that they are not suing Streander for anything he said or did at the trial. Instead they claim that his original report to the borough was not a step in a judicial proceeding and it afforded those harmed by it none of the protection which a judicial proceeding affords in that the report was not under oath; its author was not subject to prosecution for perjury; and the truth or falsity of its contents was not subject to the "searching light" of cross-examination. It is argued also that the investigation and report were made in the spring and summer of 1954 when Streander did not even know that he might be called upon to testify in court, and in fact he did not take the witness stand until almost four and one-half years later, at which time the very foundation of his report was destroyed. In the meantime, say plaintiffs, the report stood as a continuing interference with plaintiffs' business and *91 economic relations and with the contractual relations between Middlesex and the borough. Finally, plaintiffs charge that what Streander said and did was actuated by actual malice toward the plaintiffs.
It is settled law in this State that statements made in judicial or quasi-judicial proceedings and having some relation thereto are absolutely privileged against a suit for defamation. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955); Kantor v. Kessler, 132 N.J.L. 336 (E. & A. 1945); Restatement of Torts § 588. The privilege grows out of the strong public policy "that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice." Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, at p. 117 (App. Div. 1957). Even actual malice does not affect the absolute immunity provided the statement is made in the course of judicial proceedings and has some relation thereto. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955); Fenning v. S.G. Holding Corp., 47 N.J. Super. 110. Cf. La Porta v. Leonard, 88 N.J.L. 663 (E. & A. 1916).
In Rainier's Dairies v. Raritan Valley Farms, Inc., supra, the Supreme Court held that an action for tortious interferences with plaintiffs' business was subject to the same policy, the court saying at p. 564 of 19 N.J.:
"If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label."
Therefore the question is whether or not Streander's report, consultations, aid and advice were rendered in a judicial proceeding. If so, he is privileged against this suit for tortious interference. Plaintiffs do not claim that what Streander said or did was not pertinent or relevant to the then pending court suit.
*92 The privilege or immunity is not limited to what a person may say under oath while on the witness stand. It extends to statements or communications in connection with a judicial proceeding. It protects a person while engaged in private conferences with an attorney with reference to litigation. Restatement of Torts § 588; Prosser on Torts § 95 (2d ed. 1955). Cf. Rogers v. Thompson, 89 N.J.L. 639 (E. & A. 1916); Fenning v. S.G. Holding Corp., supra; Rainier's Dairies v. Raritan Valley Farms, Inc., supra.
Here the differences between Middlesex and the borough over the sewer project had culminated in the suit against the borough filed in July 1953. It was not until some nine months later that Streander's firm was called in as a consultant in connection with the pending litigation. Thereafter what was done by Streander and his employees was related to the suit. The investigation, report, consultations, aid and advice were pertinent and relevant to the litigation as preliminary steps in the defense of the case and a part of the preparation for the actual trial. As such, they are part of a judicial proceeding and within the privilege or immunity stated.
If this were not so, every expert who acts as a consultant for a client with reference to proposed or actual litigation, and thereafter appears as an expert witness, would be liable to suit at the hands of his client's adversary on the theory that while the expert's testimony was privileged, his preliminary conferences with and reports to his client were not, and could form the basis of a suit for tortious interference.
It is our conclusion that the trial court's determination that Streander's investigation, report, consultations, and testimony as an expert witness were made and given in the course of a judicial proceeding, and all had relation thereto, was correct, and the judgment in favor of the defendant Philip B. Streander should be affirmed.