585 S.E.2d 369

Gary W. WILLIAMSON, Plaintiff
Below, Appellant,

v.

Lewis HARDEN, Defendant
Below, Appellee.

No. 30751.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 11, 2003.

Decided May 7, 2003.

Richard L. Douglas, Esq., Suzanne Williams–McAuliffe, Esq., Martinsburg, West Virginia, Attorneys for Appellant.

Christopher D. Janelle, Esq., Sutton & Janelle, PLLC, Martinsburg, West Virginia, Attorney for Appellee.

PER CURIAM:

Appellant Gary A. Williamson, the plaintiff in an underlying slip and fall case, filed a separate action against appellee Lewis Harden, who had testified as a witness in the trial of the slip and fall case. Dr. Williamson alleged below that Mr. Harden had lied on the stand, and in so doing had committed abuse of process and the tort of outrage against Dr. Williamson. The lower court dismissed pursuant to W. Va. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For reasons set forth below, we affirm the decision of the trial court.

## I.

### FACTS

Gary Williamson appeals the dismissal of his lawsuit against Lewis Harden for abuse of process and outrage, however the dispute in this appeal originates in a separate action filed by Dr. Williamson against a grocery store. On May 16, 1999, appellant Williamson was shopping at Martin's Food Market in Martinsburg, West Virginia. Appellee Harden was also present at the store. Dr. Williamson allegedly slipped on the remains of a broken jar of pickles. As a result of Dr. Williamson's fall on the slick floor, his grocery cart fell on top of him, injuring him. Dr. Williamson alleged that the accident caused thousands of dollars in damages and resulted in his inability to continue his dental practice. Apparently Mr. Harden was a witness to the injurious pickle-related incident.

Dr. Williamson filed suit against the owner of the store and prior to the trial contacted Mr. Harden about his recollection of the accident. Unbeknownst to Mr. Harden, Dr. Williamson recorded their conversation. On October 3, 2001, the defense called Mr. Harden to the stand and he testified in a manner that Dr. Williamson has characterized as

false. Counsel for Dr. Williamson used the audiotape of the earlier conversation to impeach Mr. Harden on the stand. Defense counsel objected and moved for a mistrial because the plaintiff had not provided defense counsel with a copy of the tape during discovery. The trial court granted the motion and declared a mistrial.[1]

Within weeks of the first trial, Dr. Williamson filed a new action against Mr. Harden on October 15, 2001, claiming Mr. Harden's testimony constituted abuse of process and outrageous conduct. In his complaint, Dr. Williamson claimed that this conduct caused him mental and physical injuries and subjected him to ridicule and scorn; he demanded $1,000,000 in compensatory damages and $5,000,000 in punitive damages. In response, Mr. Harden filed a motion to dismiss pursuant to W. Va. R. Civ. P. Rule 12(b)(6) and requested sanctions against Dr. Williamson. After several additional motions, on December 21, 2001, the lower court dismissed the case and imposed civil sanctions against Dr. Williamson equal to the cost of defending the action, and amounting to slightly less than $1,000. The lower court denied a motion to reconsider on February 8, 2002, and it is from this final order that Dr. Williamson appeals.

## II.

### STANDARD OF REVIEW

■ Appellant asks this Court to reverse the lower court's dismissal of his case pursuant to W. Va. R. Civ. P. 12(b)(6). "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995); *accord, Powell v. Wood County Comm'n*, 209 W.Va. 639, 550 S.E.2d 617 (2001). Or phrased another way, "[w]hen a circuit court *grants* a Rule 12(b)(6) motion and dismisses a complaint for failure to state a claim upon which relief can be granted, appellate review of the circuit court's dismissal of the complaint is *de novo*."

1. The appellee avers in his brief that Dr. Williamson has since prevailed against the grocery store in a second action, but this appeal does not

*Kessel v. Leavitt*, 204 W.Va. 95, 119, 511 S.E.2d 720, 744 (1998), *cert. denied*, 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999); *accord, Shaffer v. Charleston Area Med. Ctr., Inc.*, 199 W.Va. 428, 433, 485 S.E.2d 12, 17 (1997).

## III.

### DISCUSSION

Dr. Williamson contends that the trial court erred in dismissing the case because his allegations, if taken as true and construed in the light most favorable to him, still stated a claim upon which relief could be granted. Furthermore, Dr. Williamson claims that the trial court erred by not giving him an opportunity to develop the record.

■ Dr. Williamson argues that a court should rarely grant a 12(b)(6) motion. We have noted that:

> The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Syl. pt. 3, *Chapman v. Kane Transfer Company*, 160 W.Va. 530, 236 S.E.2d 207 (1977); *accord, Napier v. Napier*, 211 W.Va. 208, 211, 564 S.E.2d 418, 421 (2002); *Harrison v. Davis*, 197 W.Va. 651, 656, 478 S.E.2d 104, 109 (1996). However, this Court has also stated that:

> Nevertheless, despite the allowance in Rule 8(a) that the plaintiff's statement of the claim be "short and plain," a plaintiff may not "fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint [,]" see *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1430 (7th Cir.1993), or where the claim is not authorized by the laws of West Virginia. A motion to dismiss under Rule 12(b)(6) enables a circuit court to weed out unfounded suits.

concern the original dispute between Dr. Williamson and the grocery store.

*State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995); *accord, Harrison v. Davis,* 197 W.Va. 651, 657–58 n. 17, 478 S.E.2d 104, 110–11 n. 17 (1996). While courts should make limited use of their power to dismiss cases under Rule 12(b)(6), the rule remains a valuable tool to control a court's docket.

### A. Abuse of Process

█ In the instant case, Dr. Williamson argues that Mr. Harden's trial testimony amounted to abuse of process. This Court has explained that: " 'Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process.' *Preiser v. MacQueen,* [177] W.Va. [273, 279], 352 S.E.2d 22, 28 (1985)." Syl. pt. 2, *Wayne County Bank v. Hodges,* 175 W.Va. 723, 338 S.E.2d 202 (1985). In *Hodges,* a car dealer had borrowed money from the bank and signed a promissory note, with his parents as co-signers of the note. When the loan went unpaid, the bank sued, and the borrowers counterclaimed, alleging abuse of process and outrage. The lower court granted summary judgment in favor of the bank and this Court affirmed, finding that "the circuit court was correct in concluding that the appellants failed to raise a factual issue with regard to the allegations of abuse of process and outrageous conduct." *Id.,* 175 W.Va. at 726, 338 S.E.2d at 205.

The decision in *Hodges* relied in large part upon the Court's decision in the case of *Preiser v. MacQueen,* 177 W.Va. 273, 352 S.E.2d 22 (1985). *Preiser* concerned a dispute between a newspaper and an attorney who had filed several libel suits against the paper. The paper countersued, alleging malicious prosecution and abuse of process. The attorney asked this Court to prohibit the circuit judge from proceeding with the case on the basis that the statute of limitation had run on the paper's claims. This Court discussed at some length a claim for abuse of process, distinguishing it from an action for malicious prosecution. Relying upon an older Virginia case, this Court explained:

The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person. . . . The authorities are practically unanimous in holding that to maintain the action [for abuse of process] there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and willful perversion of it to the unlawful injury of another.

*Id.* 177 W.Va. at 279, 352 S.E.2d at 28 (quoting *Glidewell v. Murray–Lacy and Company,* 124 Va. 563, 569, 571, 98 S.E. 665, 667, 668 (1919)).

One case in which both the lower court and this Court found that abuse of process had occurred is that of *Pote v. Jarrell,* 186 W.Va. 369, 412 S.E.2d 770 (1991) (per curiam). In that case Mr. Pote's company had contracted with the Jarrell bothers to provide a bulldozer and a driver for use in a well project. An emergency occurred on the job after the bulldozer operator had left for the day, so Mr. Pote authorized the use of the bulldozer without obtaining permission from the Jarrells. The Jarrells alleged that the bulldozer was damaged as a result, and when a dispute arose over payment for the damages, the Jarrells succeeded in having Mr. Pote indicted for stealing and damaging the bulldozer. Mr. Pote was acquitted and then sued the Jarrells for malicious prosecution, abuse of process, and other torts. A jury awarded damages to Mr. Pote and the Jarrells appealed. This Court upheld the jury's verdict, stating that "Pote presented sufficient evidence from which a jury could find that he established all of the elements of his causes of action." *Id.* 186 W.Va. at 374, 412 S.E.2d at 775.

█ We discuss the *Pote* case only to note the contrast between the egregious conduct in having *Pote* indicted for making unauthorized use (in a emergency situation) of equipment he had lawfully rented, with the alleged conduct in the instant case. In this case, Mr. Harden testified as a factual witness for the

defense in Dr. Williamson's action against the grocery store. Mr. Harden did not cause any process to issue, did not file any suit or complaint, and did not request a court to take any action, whatsoever. The lower court determined that Mr. Williamson failed to allege that Mr. Harden committed a "willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and willful perversion of it to the unlawful injury of another." *Preiser, supra.* Considering other abuse of process cases reviewed by this Court, we cannot say that the lower court erred in dismissing this aspect of Dr. Williamson's case.

### B. Tort of Outrage

Dr. Williamson's second claim was that Mr. Harden committed the tort of outrage in allegedly testifying falsely at trial. This Court has provided several descriptions of this tort in prior cases. The conduct giving rise to such an action as been described as being:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 651, 461 S.E.2d 149, 157 (1995) (quoting *Restatement (Second) of Torts* § 46(1) Comment (d) (1965)); *accord, McCammon v. Oldaker,* 205 W.Va. 24, 32, 516 S.E.2d 38, 46 (1999).

The *Tanner* case noted that "[o]ur current jurisprudence on the tort of outrage has its genesis in *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982)." *Tanner,* 194 W.Va. at 650, 461 S.E.2d at 156. In *Harless,* this Court considered a suit by a Mr. Harless, a discharged employee, against the bank, his former employer, alleging wrongful discharge and outrage. Although the Court ultimately agreed with the circuit court that

the bank's conduct was not outrageous, the Court held: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982).

This Court has explained that the tort of outrage is synonymous with intentional or reckless infliction of emotional distress. See *Tanner, supra* (equating intentional infliction of emotional distress with the tort of outrage) and *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 374, 504 S.E.2d 419, 424 (1998) (stating that the intentional or reckless infliction of emotional distress is "also called the 'tort of outrage' "). After explaining the connection between outrage and the intentional or reckless infliction of emotional distress, the Court in *Travis* also described the way in which a plaintiff may prevail in such a claim:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 504 S.E.2d 419 (1998).

In the instant case, the trial court found that the conduct of Mr. Harden, as described in Dr. Williamson's complaint, failed to satisfy the above-described definitions of outrage. The record in the instant appeal does not contain a complete record of the underlying slip and fall case, or a transcript of the trial testimony. There are any number of ways in which Mr. Harden's testi-

mony could be at odds with Dr. Williamson's view of the incident. Two people witnessing the same event may not describe it in the same manner, or agree on all the details. In light of these observations and our examination of the record before us, we are unable to say that the lower court erred in dismissing Dr. Williamson's claim for outrage.

 It is common for the two sides in any trial to disagree on the testimony of a particular witness. Because of nature of our adversarial system of justice, it is very likely that both sides will not agree on the facts and circumstances of their dispute. The court system simply could not function if it permitted a losing party to sue an adverse witness for the tort of outrage simply because the losing party feels the witness testified falsely or inaccurately.[2] In the absence of specific evidence to the contrary, we must presume that witnesses testify truthfully. The lower court, well aware of this reality, believed that Dr. Williamson's claim should be dismissed, and we find no reason to disagree with that decision.

## IV.

### CONCLUSION

For the reasons stated, the order of the Circuit Court of Berkeley County is affirmed.

Affirmed.

---

2. For a discussion of the propriety of a party suing an opposing party's expert witnesses, see *Davis ex rel. Davis v. Wallace*, 211 W.Va. 264, 565 S.E.2d 386 (2002)(*per curiam* ), in which the majority reversed the lower court's decision to impose sanctions on appellant Davis, who had sued expert witness who testified for the state in the criminal prosecution of Davis.

However, *see also*, the dissenting opinion of Justice Davis in *Wallace* (discussing principal of witness immunity and citing the case of *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) and the case of *Higgins v. Williams Pocahontas Coal Co.*, 103 W.Va. 504, 138 S.E. 112 (1927)), as well as the concurring opinion of Justice Starcher in *Wallace* (discussing the majority opinion and noting that "[t]he majority opinion clearly acknowledges that there is not a cause. of action for suing an opposing party's expert witness in West Virginia, and there is absolutely no language in the majority opinion that advocates for the creation of such a claim.") and other cases cited in the separate opinions.