625 S.E.2d 706

**George Butler WILSON, Plaintiff,**

v.

**William BERNET, Vanderbilt University, and Thomas Gillooly, Defendants.**

No. 32578.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 20, 2005.

Filed: Nov. 18, 2005.

Anthony F. Serreno, Hunt & Serreno, Edward ReBrook, III, Charleston, for the Plaintiff.

Michael M. Fisher, Holly G. DiCocco, Andrea N. Markins, Offutt, Fisher and Nord, Charleston, for the Defendants.

Justice DAVIS delivered the Opinion of the Court.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

DAVIS, Justice.

This case comes before the Court upon questions certified by the Circuit Court of Kanawha County concerning whether a cause of action for tortious interference with a pa-

rental or custodial relationship may be maintained against an adverse expert witness based upon his/her expert testimony and participation in a child custody and visitation proceeding[1] and whether, if such a cause of action is proper, it must first be preceded by a motion made pursuant to Rule 60 of the West Virginia Rules of Civil Procedure.[2] Upon a review of the parties' arguments, the pertinent authorities, and the record designated for our consideration, we answer the first certified question in the negative: no cause of action for tortious interference with parental or custodial relationship may be maintained against an adverse expert witness based upon his/her expert testimony and/or participation in a child custody and visitation proceeding. We further decline to answer the circuit court's remaining certified question insofar as our response to the first question renders the subsequent question moot.

---

1. The circuit court also certified a similar question inquiring whether such a cause of action could be maintained against opposing counsel. However, this certified question has since been dismissed by agreement of the parties. *See infra* note 12.

2. Specifically, Rule 60(b) of the West Virginia Rules of Civil Procedure provides

    [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the

## I.

## FACTUAL AND PROCEDURAL HISTORY

The instant proceeding originated during the course of divorce proceedings between the plaintiff herein, George Butler Wilson, M.D. [hereinafter "Dr. Wilson"], and his then-wife Sharon Bicks Wilson [hereinafter "Ms. Bicks"] and the ensuing child custody and visitation dispute regarding the parties' minor child, G.B.W.[3] During the custody proceedings, counsel for Ms. Bicks, Thomas Gillooly [hereinafter "Mr. Gillooly"], a defendant herein, consulted an expert witness in child psychiatry, William Bernet, M.D. [hereinafter "Dr. Bernet"], another defendant herein. Mr. Gillooly consulted Dr. Bernet, who was the Medical Director of the Psychiatric Hospital of Vanderbilt University, after Dr. Wilson alleged that Ms. Bicks' then-boyfriend had sexually abused G.B.W.[4] Dr. Bernet found no evidence of such abuse,[5] and, based

---

court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

3. G.B.W. was born on May 3, 1991. Due to the sensitive nature of the facts regarding the minor child herein, we will adhere to our prior practice in similar cases and use the child's initials rather than full name. *See In re Clifford K.*, 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005), and cases cited therein.

4. At the time the alleged sexual abuse was reported to the circuit court, on August 16, 1996, G.B.W. was visiting Dr. Wilson in Charleston, West Virginia, for the summer and was scheduled to return to Ms. Bicks' home in Memphis, Tennessee, the following day. As a result of these allegations, temporary custody of G.B.W. was transferred from Ms. Bicks to Dr. Wilson. Furthermore, contact between G.B.W. and Ms. Bicks was prohibited until the investigation of these charges concluded several months later. Finally, the record indicates that Ms. Bicks is no longer seeing the gentleman against whom the sexual abuse allegations were made. *See generally State ex rel. George B.W. v. Kaufman*, 199 W.Va. 269, 483 S.E.2d 852 (1997) (concerning expert evaluation of G.B.W. regarding sexual abuse allegations).

5. It appears from the record, however, that Dr. Wilson did not permit Dr. Bernet to personally examine G.B.W.

upon the evidence presented, the circuit court also found no such abuse had occurred. By final order entered June 4, 1997, the circuit court awarded permanent custody of G.B.W. to Ms. Bicks and visitation privileges to Dr. Wilson.[6] The circuit court additionally asked Dr. Bernet to formulate a reunification and visitation plan to re-establish contact[7] between G.B.W. and Ms. Bicks.[8]

Following the aforementioned resolution of the custody and visitation proceedings, Dr. Wilson, on July 13, 1999, filed the instant matter against Mr. Gillooly, Dr. Bernet, and Vanderbilt University asserting a cause of action for tortious interference with a parental or custodial relationship.[9] Thereafter, on February 10, 2000, Mr. Gillooly, joined by the remaining defendants, filed a motion for summary judgment, but the circuit court deferred ruling thereon until the completion of discovery. Following various other procedural delays,[10] Dr. Bernet and Vanderbilt University renewed their motion for summary judgment on March 18, 2004. On April 16, 2004, Mr. Gillooly also renewed his motion for summary judgment. By order entered July 19, 2004, the circuit court granted, in part, and denied, in part, the defendants' motions for summary judgment; of particular import to the instant proceeding, the circuit court denied the defendants' motions for summary judgment on Dr. Wilson's claims of tortious interference with a parental or custodial relationship. As a result, the defendants then moved the circuit court to certify to this Court questions pertaining to the tortious interference claims. By order entered October 4, 2004, the circuit court certified the following questions to this Court:

**Certified Question No. 1:** May the holding in *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720 (1998), which adopted a cause of action for tortious interference with a parental or custodial relationship, be applied to maintain a cause of action against an adverse child psychiatry expert witness who provides expert testimony in a hearing concerning visitation and custody and who participates in a reunification plan between mother and child pursuant to the orders of the court?

YES *PZJr*

NO ——

**Certified Question No. 2:** Does a cause of action exist for tortious interference with a parental relationship as recognized in *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720 (1998), in favor of a litigant involved in child custody/visitation proceedings against an attorney representing an opposing party in that litigation?

YES *PZJr*

NO ——

**Certified Question No. 3:** If the tortious interference with a parental/custodial relationship claim is based upon factual issues and/or allegations that were raised and resolved against the litigant in the child custody/visitation proceeding, must the litigant first seek and obtain relief from the judgment entered in the child custody/visitation proceeding with respect to such issues or allegations pursuant to Rule 60 of the West Virginia Rules of Civil Proce-

---

6. Dr. Wilson appealed this decision. *See Sharon B.W. v. George B.W.,* 203 W.Va. 300, 507 S.E.2d 401 (1998) (per curiam) (addressing custody of and visitation with parties' minor child). *See also Sharon B.W. v. George B.W.,* 205 W.Va. 594, 519 S.E.2d 877 (1999) (per curiam) (resolving equitable distribution, alimony, and other financial issues related to parties' divorce).

7. *See supra* note 4.

8. At some point following the conclusion of the aforementioned events, permanent custody of G.B.W. was awarded to Dr. Wilson.

9. Dr. Wilson also asserted additional causes of action against the named defendants, which theories of liability are not relevant to the in-

stant proceeding. Such other counts included conduct constituting a fraud upon the court; intentional infliction of emotional distress; and actions which caused Dr. Wilson to declare personal bankruptcy. An additional count levied against Dr. Bernet charged him with practicing medicine without a license. Lastly, Dr. Wilson also alleged that Vanderbilt University was liable under the theory of respondeat superior.

10. *See State ex rel. Kaufman v. Zakaib,* 207 W.Va. 662, 535 S.E.2d 727 (2000) (prohibiting Dr. Wilson from deposing trial judge who presided over his divorce proceedings).

dure [11] or otherwise as a condition precedent to assert the tortious interference claim?

YES ___

NO *PZJr*

(Footnote added). By order entered March 24, 2005, this Court accepted these certified questions for review.[12]

## II.

## STANDARD OF REVIEW

■ The issues presented by the instant matter involve questions of law certified to this Court. When called upon to consider certified questions, we employ a plenary review and review anew the answers provided by the circuit court. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). *See also* Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."); Syl. pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."). Mindful of this standard, we proceed to consider the questions presented for our determination.

## III.

## DISCUSSION

In this case, we are called upon to answer two [13] certified questions from the Circuit Court of Kanawha County:

**Certified Question No. 1:** May the holding in *Kessel v. Leavitt*, 204 W.Va. 95, 511 S.E.2d 720 (1998), which adopted a cause of action for tortious interference with a parental or custodial relationship, be applied to maintain a cause of action against an adverse child psychiatry expert witness who provides expert testimony in a hearing concerning visitation and custody and who participates in a reunification plan between mother and child pursuant to the orders of the court?

**Certified Question No. 3:** If the tortious interference with a parental/custodial relationship claim is based upon factual issues and/or allegations that were raised and resolved against the litigant in the child custody/visitation proceeding, must the litigant first seek and obtain relief from the judgment entered in the child custody/visitation proceeding with respect to such issues or allegations pursuant to Rule 60 of the West Virginia Rules of Civil Procedure or otherwise as a condition precedent to assert the tortious interference claim?

Considering these questions, the circuit court answered the first question in the affirmative and the third question in the negative. Before this Court, Dr. Wilson contends that the circuit court correctly answered the questions before it, while Dr. Bernet argues that the circuit court's answers were erroneous.

### A. Expert Witness Immunity

Before addressing the issue squarely presented by the circuit court's certified questions, it is instructive to examine the context within which such questions are posed, *i.e.*, the level of immunity, if any, generally enjoyed by an expert witness. Although we

---

**11.** *See supra* note 2.

**12.** Following the Court's acceptance of the above-quoted certified questions, Mr. Gillooly filed for personal bankruptcy. As a result of such bankruptcy proceedings, the bankruptcy court discharged Mr. Gillooly's debts, including his potential indebtedness to Dr. Wilson arising from Dr. Wilson's suit against him. Accordingly, the parties, by agreement and in keeping with the ruling of the bankruptcy court, moved this Court to dismiss Dr. Wilson's pending cause of action against Mr. Gillooly and the circuit court's second certified question arising therefrom. By order entered July 19, 2005, we granted the requested dismissal. Insofar as the circuit court's second certified question has now been dismissed, we will accordingly not consider or decide in this opinion the issue posed thereby regarding the propriety of maintaining a tortious interference cause of action with a parental or custodial relationship against opposing counsel based upon his/her participation in a proceeding to determine child custody and visitation.

**13.** *See supra* note 12.

previously have considered whether or not an expert witness is entitled to immunity vis-a-vis his/her testimony and participation in judicial proceedings, we have not squarely decided the issue. *See Davis ex rel. Davis v. Wallace,* 211 W.Va. 264, 269, 565 S.E.2d 386, 391 (2002) (per curiam) ("West Virginia law is not settled in the area of expert witness immunity and, at this time, we are not addressing the issue of witness immunity."). *See also Williamson v. Harden,* 214 W.Va. 77, 585 S.E.2d 369 (2003) (per curiam) (considering degree of immunity to be accorded to adverse fact witness). For example, in *Davis* we recognized that

> [t]he law regarding witness immunity is sparse in West Virginia, and the issue of expert witness immunity has not been addressed by this Court. Historically, in West Virginia and in other jurisdictions, witnesses have been regarded as having an absolute immunity regarding their testimony given during a trial. This immunity encourages witnesses "to speak freely without the specter of subsequent retaliatory litigation for their good faith testimony. The immunity was created at common law to shield the percipient [fact] witness who was called into court to testify as to what he saw, heard, or did that was relevant to an issue in the case." Christopher M. McDowell, Note, *Authorizing the Expert Witness to Assassinate Character for Profit: A Reexamination of the Testimonial Immunity of the Expert Witness,* 28 U. Mem[.] L.Rev. 239, 275 (1997).

211 W.Va. at 267, 565 S.E.2d at 389. *See also Davis,* 211 W.Va. at 276, 565 S.E.2d at 398 (Starcher, J., concurring) ("The majority opinion clearly acknowledges that there is *not* a cause of action for suing an opposing party's expert witness in West Virginia, and there is absolutely no language in the majority opinion that advocates for the creation of such a claim." (emphasis in original)). Similarly, in *Williamson* we commented, with respect to adverse fact witnesses, that "[t]he court system simply could not function if it permitted a losing party to sue an adverse witness ... simply because the losing party feels the witness testified falsely or inaccurately. In the absence of specific evidence to the contrary, we must presume that witnesses testify truthfully." 214 W.Va. at 82, 585 S.E.2d at 374 (footnote omitted). In spite of these dicta comments, however, the precise level of immunity enjoyed by adverse expert witnesses in West Virginia remains unsettled.

While this Court has not yet defined the parameters of expert witness immunity, other courts considering the issue have definitively ruled on the matter. Preeminent among such tribunals is the United States Supreme Court, which addressed the immunity issue in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Reviewing early English and American jurisprudence, the Court explained that "the common law's protection for witnesses [14] is 'a tradition ... well grounded in history and reason.'" *Id.,* 460 U.S. at 334, 103 S.Ct. at 1115, 75 L.Ed.2d at 107 (quoting *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1027 (1951)) (footnote added). "In short, the common law provided absolute immunity from subsequent damages liability for all persons ... who were integral parts of the judicial process." 460 U.S. at 335, 103 S.Ct. at 1115–16, 75 L.Ed.2d at 108. Such protection was deemed to be necessary in order that "the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." 460 U.S. at 333, 103 S.Ct. at 1114, 75 L.Ed.2d at 106 (internal quotations and citation omitted). For this reason, "[t]he common law recognized that .... '[a]bsolute immunity is ... necessary to assure that ... witnesses can perform their ... function[ ] ... without harassment or intimidation.'" 460 U.S. at 335, 103 S.Ct. at 1115, 75 L.Ed.2d at 108 (quoting *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895, 919 (1978)). Such immunity traditionally was conditioned only upon the prerequisite that

**14.** While the authorities relied upon by the United States Supreme Court in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), are phrased in terms of witnesses generally, as opposed to specifically referencing expert witnesses, the issue before the Court for decisional purposes concerns the level of immunity to which an adverse expert witness is entitled. *Cf.* note 18, *infra.*

the witness's "statements were relevant to the judicial proceeding" in which they were made.[15] *Briscoe,* 460 U.S. at 331, 103 S.Ct. at 1113, 75 L.Ed.2d at 105 (footnote omitted).

The Court further examined the public policy reasons favoring a grant of immunity to expert witnesses, suggesting that, "in the absence of a privilege, honest witnesses might erroneously be subjected to liability because they would have difficulty proving the truth of their statements. This result seem[s] inappropriate in light of the witness' duty to testify." 460 U.S. at 333 n. 13, 103 S.Ct. at 1114 n. 13, 75 L.Ed.2d at 106 n. 13 (citations omitted). More importantly, though, the Court recognized that

> [a] witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify.... And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.... A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence.... But the truth-finding process is better served if the

witness' testimony is submitted to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies."

460 U.S. at 333–34, 103 S.Ct. at 1114–15, 75 L.Ed.2d at 106–07 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 440, 96 S.Ct. 984, 999, 47 L.Ed.2d 128, 149 (1976) (White, J., concurring)) (citations and footnotes omitted). Accordingly, the Court concluded that the adverse expert witnesses involved in the *Briscoe* litigation should be afforded immunity for their trial testimony.

Other jurisdictions faced with the question of expert witness immunity have generally followed the precedent set by the United States Supreme Court in *Briscoe* and have determined that adverse or opposing expert witnesses should enjoy immunity for their testimony and participation in judicial proceedings.[16] In sum, these courts concur that expert witness immunity is designed "to protect adverse witnesses from suit by opposing parties after the lawsuit ends." *Mattco Forge, Inc. v. Arthur Young & Co.,* 6 Cal. Rptr.2d 781, 789, 5 Cal.App.4th 392, 405 (1992). *Accord Marrogi v. Howard,* 805 So.2d 1118, 1126 (La.2002) ("[A]n adverse expert witness [is] ... immune from a retali-

---

**15.** *Accord Higgins v. Williams Pocahontas Coal Co.,* 103 W.Va. 504, 507, 138 S.E. 112, 113 (1927) (recognizing, with respect to privileged written communication, that "[i]t is settled law that the test of a privileged statement is not its truth or good faith, but its relevancy").

**16.** A few courts have further extended an adverse witness's immunity to include his/her pretrial preparations. For example, in *Middlesex Concrete Products & Excavating Corp. v. Carteret Industrial Association,* 68 N.J.Super. 85, 172 A.2d 22 (1961), the Superior Court of New Jersey explained that

> [i]f [the expert witness were not granted such immunity], every expert who acts as a consultant for a client with reference to proposed or actual litigation, and thereafter appears as an expert witness, would be liable to suit at the hands of his client's adversary on the theory that while the expert's testimony was privileged, his preliminary conferences with and reports to his client were not and could form the basis of a suit for tortious interference.

*Id.,* 68 N.J.Super. at 92, 172 A.2d at 25. Similarly, the court in *Kahn v. Burman,* 673 F.Supp. 210

(E.D.Mich.1987) (mem.), *aff'd,* 878 F.2d 1436 (6th Cir.1989) (unpublished table decision), concluded that "[l]ogical concerns, both legal and policy-based, strongly suggest that witness immunity encompasses experts' reports prepared either before or during litigation." 673 F.Supp. at 212. Among these reasons, the court noted that such reports "satisfy the witness immunity prerequisite of 'relevancy to the judicial proceedings,' " *id.* (quoting *Briscoe v. LaHue,* 460 U.S. at 331, 103 S.Ct. at 1113, 75 L.Ed.2d at 105); a "policy of providing for reasonably unobstructed access to the relevant facts and issues" of a case, *Kahn,* 673 F.Supp. at 213; and concerns that, in the *Kahn* case, if doctors' expert reports reviewing a patient's medical records were not granted immunity, groundless medical malpractice suits would be encouraged and fewer would be "eradicated ... prior to filing," *id. See also Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.,* 113 Wash.2d 123, 136, 776 P.2d 666, 673 (1989) (en banc) ("[T]he immunity of expert witnesses extends not only to their testimony, but also to acts and communications which occur in connection with the preparation of that testimony.").

ation suit filed by the losing party in the earlier litigation[.]"). *See also LLMD of Michigan, Inc. v. Jackson–Cross Co.*, 559 Pa. 297, 307, 740 A.2d 186, 191 (1999) ("An expert witness may not be held liable merely because his or her opinion is challenged by another expert or authoritative source."); *Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.*, 113 Wash.2d 123, 131, 776 P.2d 666, 670 (1989) (en banc) ("Civil liability is too blunt an instrument to achieve much of a gain in reliability in the arcane and complex calculations and judgments which expert witnesses are called upon to make.").

The reasons given by these tribunals for granting such immunity are varied and include a recognition that "the expert owes no professional duty to the adversary," [17] *Murphy v. A.A. Mathews, a Division of CRS Group Engineers, Inc.*, 841 S.W.2d 671, 682 n. 11 (Mo.1992) (en banc), and the concern that, "unless expert witnesses are entitled to immunity, there will be a loss of objectivity in expert testimony generally," *Bruce*, 113 Wash.2d at 130, 776 P.2d at 670. Other courts have determined that immunity is essential in order that "all witnesses may speak freely without the fear of a reprisal suit for slander," *Moity v. Busch*, 368 So.2d 1134, 1136 (La.Ct.App.1979), and to avoid the potential "chilling effect on free testimony and access to the courts" if suits against adverse expert witnesses were permitted, *Wright v.*

*Yurko*, 446 So.2d 1162, 1164 (Fla.Dist.Ct.App. 1984). A further consideration in favor of affording adverse expert witnesses immunity is that "the protected interest [i]s the administration of justice and its objective to uncover the truth," *Marrogi*, 805 So.2d at 1128, and a corresponding concern that if adverse expert witnesses were not granted immunity, they "would always be fearful of subsequent civil suits and would be extremely hesitant or unwilling to testify," *Mattco Forge*, 6 Cal. Rptr.2d at 789, 5 Cal.App.4th at 405 (internal quotations and citation omitted).

However, perhaps the most compelling reason to grant adverse expert witnesses immunity for their testimony and trial participation is the built-in mechanism, in the litigation process, itself, to ascertain the truth and credibility of an adverse witness's testimony.

> The law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.... This policy can logically apply, however, only to trial testimony of adverse witnesses.[18]

*Mattco Forge*, 6 Cal.Rptr.2d at 789, 5 Cal. App.4th at 406 (footnote added) (internal quotations and citations omitted).

---

**17.** *Accord Davis ex rel. Davis v. Wallace*, 211 W.Va. 264, 269, 565 S.E.2d 386, 391 (2002) (per curiam) ("[C]ourts ... [are] understandably unwilling to allow a party to sue the opposing party's expert witness for malpractice or negligence, in part because there is no reliance between the expert witness and the opposing party...." (citations omitted)).

**18.** Due to the facts involved in the instant proceeding, our discussion herein is necessarily limited to the immunity to be afforded to adverse or hostile expert witnesses. Some jurisdictions, however, have considered whether a litigant may file suit against a friendly expert witness who the litigant had previously retained in connection with prior judicial proceedings. In general, these courts have concluded that the public policy reasons that provide immunity for adverse expert witnesses do not apply to shield a litigant's own expert from suit. *See, e.g., Mattco Forge, Inc. v. Arthur Young & Co.*, 6 Cal.Rptr.2d 781, 783, 5 Cal.App.4th 392, 395 (1992) ("California precedent does not authorize, and the policies underlying the privilege do not support,

its use to protect a negligent expert witness from liability to the party who hired that witness."); *Marrogi v. Howard*, 805 So.2d 1118, 1129 (La. 2002) ("[N]o overarching public purpose is served by applying witness immunity to shield a retained expert witness from a claim subsequently asserted by the party who hired him when the claim alleges deficient performance of his professional and contractual duties to provide litigation support services."); *Murphy v. A.A. Mathews, a Div. of CRS Group Eng'rs, Inc.*, 841 S.W.2d 671, 680 (Mo.1992) (en banc) ("[W]e do not believe that [expert witness] immunity was meant to or should apply to bar a suit against a privately retained professional who negligently provides litigation support services." (footnote omitted)); *Bruce*, 113 Wash.2d at 129, 776 P.2d at 669 ("[I]t is immaterial that an expert witness is retained by a party rather than appointed by the court. The basic policy of ensuring frank and objective testimony obtains regardless of how the witness comes to court."). *Cf. James v. Brown*, 637 S.W.2d 914 (Tex.1982) (per curiam) (finding cause of action against independent experts to be authorized by statute).

■ Based upon the foregoing authorities and maintaining consistency with our prior cases discussing this matter, we therefore hold that an adverse expert witness enjoys civil immunity for his/her testimony and/or participation in judicial proceedings where such testimony and/or participation are relevant to said judicial proceedings.[19] In rendering this ruling, we do not, however, address those circumstances in which an expert witness's testimony or participation in judicial proceedings may constitute criminal activity insofar as Dr. Wilson has not alleged in his underlying civil action that any of the defendants' actions rise to the level of criminal conduct.

B.  *First Certified Question: Maintenance of Cause of Action for Tortious Interference with Parental or Custodial Relationship Against Adverse Party's Expert Witness*

Turning now to the precise question posited by the first certified question, we must ascertain whether a cause of action for tortious interference with a parental or custodial relationship can be maintained against an adverse expert witness based upon his/her testimony and participation in child custody and visitation proceedings. In this regard, the question presented by the circuit court inquires

> **Certified Question No. 1:** May the holding in *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720 (1998), which adopted a cause of action for tortious interference with a parental or custodial relationship, be applied to maintain a cause of action against an adverse child psychiatry expert witness who provides expert testimony in a hearing concerning visitation and custody and who participates in a reunification plan between mother and child pursuant to the orders of the court?

Dr. Wilson argues that the facts of this case support his maintenance of a tortious interference cause of action against Dr. Bernet

because, in Dr. Wilson's opinion, Dr. Bernet's testimony and participation in the underlying child custody and visitation proceedings constituted tortious interference with Dr. Wilson's parental and custodial rights vis-a-vis his son. By contrast, Dr. Bernet contends that such a cause of action is not maintainable in this case because adverse expert witnesses enjoy immunity from suit.

Before addressing whether the facts of this particular case are sufficient to support a cause of action for tortious interference with a parental or custodial relationship, we must first consider the context within which this question is posed. In other words, the person against whom relief is sought is an adverse expert witness. As we explained in the preceding section, we are reluctant to recognize a party's right to bring a cause of action against an adverse expert witness because of the chilling effect that such a course would undoubtedly have upon the truth seeking process of the judicial system. Therefore, our primary inclination is to answer this certified question in the negative.

Nonetheless, we must also consider the nature of the cause of action asserted to determine whether, in fact, a cause of action for tortious interference with parental or custodial relationship should be excepted from our rule of adverse expert witness immunity. As stated in Syllabus point 7 of *Kessel v. Leavitt,*

> [t]o make out a *prima facie* claim for tortious interference with parental or custodial relationship, the complaining parent must demonstrate: (1) the complaining parent has a right to establish or maintain a parental or custodial relationship with his/her minor child; (2) a party outside of the relationship between the complaining parent and his/her child intentionally interfered with the complaining parent's parental or custodial relationship with his/her child by removing or detaining the child from returning to the complaining parent, without that parent's consent, or by otherwise preventing the complaining parent from exercising his/her parental or custo-

---

**19.** *But see Davis,* 211 W.Va. at 275 n. 5, 565 S.E.2d at 397 n. 5 (Davis, C.J., dissenting) (suggesting that adverse expert witnesses may, where the facts so warrant, be held criminally liable for crimes of perjury, subornation of perjury, and/or

false swearing). *Accord Briscoe v. LaHue,* 460 U.S. at 341 n. 26, 103 S.Ct. at 1118 n. 26, 75 L.Ed.2d at 111 n. 26 ("[W]itnesses enjoyed no common-law immunity from criminal prosecution for perjury." (citation omitted)).

dial rights; (3) the outside party's intentional interference caused harm to the complaining parent's parental or custodial relationship with his/her child; and (4) damages resulted from such interference. 204 W.Va. 95, 511 S.E.2d 720 (1998). Not included within the scope of this cause of action, however, are claims asserting tortious interference with a parent's visitation rights. As to this point, we cautioned that "[o]ur discussion of tortious interference will be limited to tortious interference with a parent's parental or custodial relationship with his/her child as distinguished from tortious interference with a parent's visitation rights...." *Kessel,* 204 W.Va. at 135 n. 43, 511 S.E.2d at 760 n. 43. Moreover, in recognizing the tortious interference with parental or custodial relationship cause of action and its limitations, we enumerated certain affirmative defenses thereto:

Where a parent presents a *prima facie* case of tortious interference with his/her parental or custodial relationship, the party interfering with such relationship may assert the affirmative defense of justification, *i.e.,* the party possessed a reasonable, good faith belief that interference with the parent's parental or custodial relationship was necessary to protect the child from physical, mental, or emotional harm, as contemplated by W. Va.Code § 49–1–3 (1994) (Repl.Vol.1996). A party also cannot be held liable for tortious interference with a parental or custodial relationship if he/she acted negligently, rather than intentionally; possessed a reasonable, good faith belief that the interference was proper (*i.e.,* no notice or knowledge of an original or superseding judicial decree awarding parental or custodial rights to complaining parent); or reasonably and in good faith believed that the complaining parent did not have a right to establish or maintain a parental or custodial relationship with the minor child (*i.e.,* mistake as to identity of child's biological parents where paternity has not yet been formally established).

Syl. pt. 8, *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720.

It appears, then, that the primary consideration in maintaining a tortious interference with parental or custodial relationship cause of action against one who has allegedly so tortiously interfered is that the defendant has removed or detained the child from his/her parent or custodian or otherwise interfered in the parent's or custodian's exercise of such rights. Syl. pt. 7, *id.* In *Kessel,* the misconduct that led to our recognition of this cause of action involved an unwed mother who, in collusion with her parents, her brother, and two attorneys, not only prevented the child's father from learning of the child's whereabouts but also precluded him from formulating or developing any type of parental relationship with the child or exercising any sort of parental rights whatsoever by secretly placing the child for adoption in Canada. Involved therein was conduct involving the intentional, deliberate, conspiratorial, and elaborately orchestrated cross-country and international taking and concealment of the child; the compelled separation of the child from his biological father; and other egregious conduct that barely fell short of outright kidnaping and abduction. While compelling arguments can arguably be made to permit such a cause of action to be maintained against an adverse expert witnesses where the facts so warrant, particularly in light of the sanctity we accord to the parent-child relationship,[20] we do not believe that an adverse expert witness's trial testimony and participation in child custody and visitation proceedings normally constitutes the type of wrongful conduct contemplated by the *Kessel* Court.

■ Therefore, we hold that no cause of action for tortious interference with parental or custodial relationship may be maintained against an adverse expert witness based upon his/her expert testimony and/or participation in a child custody and visitation proceeding. Accordingly, we answer the circuit court's first certified question in the negative.

---

**20.** *See, e.g.,* Syl. pt. 1, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) ("In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.").

*C. Third Certified Question: Motion for Relief pursuant to W. Va. R. Civ. P. 60 as Prerequisite to Maintenance of Cause of Action for Tortious Interference with Parental or Custodial Relationship*

The final [21] matter remaining for our resolution in this case is the circuit court's third certified question, which queries:

> **Certified Question No. 3:** If the tortious interference with a parental/custodial relationship claim is based upon factual issues and/or allegations that were raised and resolved against the litigant in the child custody/visitation proceeding, must the litigant first seek and obtain relief from the judgment entered in the child custody/visitation proceeding with respect to such issues or allegations pursuant to Rule 60 of the West Virginia Rules of Civil Procedure or otherwise as a condition precedent to assert the tortious interference claim?

Dr. Wilson suggests that moving for relief pursuant to Rule 60 [22] is not a necessary prerequisite to filing a tortious interference cause of action against an adverse expert witness, while Dr. Bernet contends that Dr. Wilson has not satisfied the requirements of Rule 60 by either moving for relief thereunder or filing an independent action [23] as contemplated thereby.

Reviewing the language employed by the circuit court in this question, and considering it with respect to the other questions certified contemporaneously therewith, it is apparent that this question presupposes that one may maintain a cause of action for tortious interference with a parental or custodial relationship against an adverse expert witness based upon the witness's testimony and/or participation in a child custody and visitation proceeding. In other words, this question inquiring about the necessity of requesting Rule 60 relief as a prerequisite to maintaining a tortious interference cause of action comes into play only if such a cause of action is found to be permissible. Insofar as we have concluded that a cause of action for tortious interference with a parental or custodial relationship may *not* be maintained against an adverse expert witness who has testified and/or participated in a child custody and visitation proceeding, it is irrelevant as to whether a Rule 60 motion must first precede such impermissible suit. Because our negative answer to the first certified question effectively disposes of the need to answer this certified question, we find the circuit court's third certified question to have been rendered moot and decline further to consider the matter.

## IV.

### CONCLUSION

For the foregoing reasons, we answer the first question certified by the Circuit Court of Kanawha County in the negative and conclude that a cause of action for tortious interference with a parental or custodial relationship cannot be maintained against an adverse expert witness based upon his/her participation in child custody and visitation proceedings. Based upon our response to the first certified question, we further find that the third certified question has been rendered moot.

Certified Questions Answered.

---

21. *See supra* note 12.

22. See note 2, *supra*, for the relevant text of Rule 60.

23. For purposes of Rule 60 of the West Virginia Rules of Civil Procedure,

> [t]he definition of an independent action, as contemplated by *W.Va.R. Civ.P.* 60(b), is an equitable action that does not relitigate the issues of the final judgment, order or proceeding from which relief is sought and is one that is limited to special circumstances.

Syl. pt. 2, *N.C. v. W.R.C.*, 173 W.Va. 434, 317 S.E.2d 793 (1984). Furthermore,

> [i]n order to obtain relief from a final judgment, order or proceeding through an independent action, the independent action must contain the following elements: (1) the final judgment, order or proceeding from which relief is sought must be one that, in equity and good conscience, should not be enforced; (2) the party seeking relief should have a good defense to the cause of action upon which the final judgment, order or proceeding is based; (3) there must have been fraud, accident or mistake that prevented the party seeking relief from obtaining the benefit of his defense; (4) there must be absence of fault or negligence on the part of the party seeking relief; and (5) there must be no adequate legal remedy.

Syl. pt. 3, *id.*

**638**

STARCHER, J., concurring.

I concur in this Court's opinion and judgment in the instant case.

I write separately to note that this Court's opinion decidedly does NOT create a blanket civil liability "exoneration" or "immunity" for experts who engage in criminal or similarly outrageous misconduct, and who injure others by that misconduct.

Experts who commit perjury, conspire to obstruct justice, commit forgery, etc., remain civilly liable for all damages inflicted on victims of the experts' misconduct. *See, e.g., Keko v. Hingle,* 318 F.3d 639 (5th Cir.2003) (case below, 1999 WL 508406, E.D.La., 98–2189) (expert not civilly immune for pretestimonial activities). For example, under this Court's opinion in the instant case, the late Fred Zain, West Virginia's "poster boy" of corrupt experts, *see Matter of Investigation of West Virginia State Police Crime Laboratory, Serology Div.,* 190 W.Va. 321, 438 S.E.2d 501 (1993), would be civilly liable to his victims.